DeForest *v.* The State.

## DeForest *v.* The State.

CRIMINAL LAW AND PRACTICE—EVIDENCE.—In justifying a homicide in defence of person, property, &c., it is competent for the defendant to give in evidence any facts tending to show the character of the attack he resisted, the intention with which it was made, and that he had reasonable grounds to believe it was necessary to do what he did in resisting it, and to this end he may show the relations that had existed between himself and the deceased for an indefinite period before the killing.

SELF-DEFENCE.—If a man, on returning to his own house find himself barred out and excluded therefrom by another, and then repeatedly demands, and is denied admission, he has a legal right to break in the door; and if he encounter resistance on thus entering, and be first stricken by the unlawful occupant with a deadly weapon, and then, meeting force with force, he take the life of such occupant, such killing would seem to be excusable homicide, committed in self-defence.

APPEAL from the *Marion* Circuit Court.

WORDEN, J.—The appellant was indicted for the murder, in the second degree, of *John Burrows.* Conviction of manslaughter, and sentence of imprisonment in the State's prison for thirteen years.

The following are the facts, as they are set out in a bill of exceptions:

The defendant was the occupant of a house in the city of *Indianapolis.* This house consisted of a front room, back of which were two bed-rooms, with doors opening into the front room; also a porch, with a door opening into the front room, and a bed-room at one end of the porch, with a door opening from the porch. This bed-room did not communicate with other parts of the house, except by way of the porch. The defendant had let to a *Mrs. Bratton* the front room and one of the bed-rooms back of it, reserving to himself, however,

the right of ingress and egress to and from the other bed-rooms through the front room. The defendant's wife slept in the bed-room to which the right of way was thus reserved. *Burrows*, the deceased, usually slept in the bed-room at the end of the porch, and the defendant slept sometimes with his wife and sometimes with the deceased. On the day before the homicide was committed, a niece of *Mrs. DeForest* came there on a visit. The defendant ate his supper and went down town. It was then agreed, says the bill of exceptions, that he should sleep with the deceased, in the bed-room at the end of the porch, and that the niece and *Mrs. DeForest* should sleep together in the other bed-room. After the defendant went down town, as above mentioned, *Mrs. Bratton* invited the deceased to sleep in the front room that night, as she says she was afraid of the old man—the defendant. This was the first time such an invitation had been extended to the deceased. The parties in the house, viz: *Mrs. Bratton* and two sisters-in-law, the deceased, *Mrs. DeForest* and her niece, retired to bed, having taken the axes into the house, and hidden them under the bed, and having fastened the door to keep the defendant out. The defendant returned about 11 o'clock, or after, and, finding the door fastened, asked those inside to open it; they refused; he asked several times; then went away to one *Dan. Man's;* came back, and said that *Man* told him to break open the door; the parties inside still refused to open it; he then went into the cellar and got an ax, which had been forgotten when the axes were gathered up and taken into the house and hidden, as above mentioned, and with the ax he beat down the door; the door being beaten down, the defendant encountered the deceased, who had an ax handle in his hand, and the evidence very strongly tends to show that the deceased first struck the defendant upon or about the head with it. The defendant

struck the deceased upon the head with the ax, of which he died in the space of between two and three months.

The testimony of several witnesses shows that the defendant was a peaceable, quiet, industrious man, and nothing appears to show that he was in the habit of intoxication, or otherwise, to explain why the inmates of the house should be afraid of him, or why they should have gathered up the axes and taken them into the house, and locked the door against him. On the evidence, as it comes up to us, it is extremely doubtful whether the conviction ought to be sustained. Without explanation, it looks somewhat strange that the axes should have been brought into the house, and secreted under the bed; that the deceased should, for the first time, have slept in the room rented by *Mrs. Bratton*, and that the door should have been locked to keep the defendant out. It would have been much more satisfactory had a reason been shown for all this defensive preparation. The defendant, it will be seen, was not a party to the arrangement by which he was to sleep in the room on the porch with the deceased; that arrangement was made, according to our reading of the bill of exceptions, after he had gone down town. Upon coming home he found his door locked; he found himself locked out of his own house, and those within refusing to open it; he went to a neighbor, and upon again returning, the parties within still refusing to open the door, he got an ax and beat it down; this, for aught we can see, he had a legal right to do. Upon knocking the door down, he encountered the deceased upon the inside, armed with an ax handle, and, if the deceased struck the defendant with it first over the head, we are not prepared to say that the homicide was not, under the circumstances, excusable as a matter of self-defence.

But we do not decide the case upon the evidence. Enough of the case has been stated to show the application of certain

DeForest v. The State.

evidence offered by the defendant. The defendant proved, that, about five months before the homicide, the deceased struck the defendant with a club, which felled him, but he recovered, and started towards the witness' door; the deceased seized an ax and threw at him, which grazed his head as he was entering the door. The deceased threatened to kill him.

This evidence, after having been given, was withdrawn from the jury, and the defendant excepted. The defendant then offered to prove that there had been a continued series of threats made by the deceased against the life of the defendant during the five months previous to the difficulty, and coming down to that time, and that he had, on several occasions, attempted to put those threats into execution; and also that the deceased was physicially much stronger and more powerful than the defendant. The testimony was excluded.

In view of the case made by the State against the defendant, we think the evidence offered by him should have been received as tending to show that he had reasonable ground to believe that it was necessary for him to go so far as he did in order to protect his own life, or his person, from great harm; in short, to show that he was acting in justifiable self-defence. The authorities, we think, clearly show that the evidence offered was admissible. *Dukes* v. *The State*, 11 Ind. 557; Wharton's Am. Cr. Law, sec. 641; Wharton's Homicide, p. 217.

*Per Curiam.*—The judgment below is reversed, and the cause remanded.

*J. Milner*, for the appellant.

*W. W. Leathers*, Prosecuting Attorney, for the State.