STATE v. MIDDLEHAM.

1. **Criminal Evidence:** MURDER: EXCLAMATIONS OF DEFENDANT'S WIFE. The exclamations of a wife upon the killing of her son by her husband, made in the presence and hearing of the husband, are admissible as against him. The exclamation in this case was not a "communication" by the wife to the husband.

2. ———: ———: ERROR WITHOUT PREJUDICE. Where certain evidence had no other tendency than to establish the grade of the offense, but the jury found the defendant guilty of the lower grade, the defendant was not prejudiced thereby, and, if there was error in its admission, it was not reversible error.

3. ———: STATE NOT BOUND TO CALL ALL ITS WITNESSES. While the state should be held to prove the whole transaction constituting a crime before the prisoner is put to his defense, this does not make it incumbent upon the state to call all the witnesses who were present at the transaction, where the whole transaction can be shown by a part of them.

4. ———: SELF-DEFENSE: DANGEROUS CHARACTER OF DECEASED. As bearing upon the question of self-defense in a prosecution for murder, the defendant might be permitted to show that he knew the deceased to be quarrelsome and dangerous; but in such case a question to a witness requiring him to state whether the manner of the deceased was "reckless" or "quiet" was properly ruled out.

5. **Murder:** SELF-DEFENSE: OBLIGATION TO RETREAT. A man who is assaulted in his own house need not retreat in order to avoid slaying his assailant in self-defense; but he must not even there take life, unless to all reasonable appearances it is necessary, to protect himself and his home.

*Appeal from Jasper District Court.*

WEDNESDAY, DECEMBER 5.

THE defendant was indicted and tried for murder in the first degree, and convicted of manslaughter. He appeals.

*Martin, Murphy & Lynch, Bolton & McCoy* and *H. S. Winslow,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

DAY, CH. J.—I. The evidence shows that the defendant

killed his step-son, William Davis, with a knife, in the Central House, a hotel kept by the defendant. One Penlan was

1. CRIMINAL evidence: murder: exclamations of defendant's wife. introduced as a witness, and testified as follows: "John Carr arrested defendant that day in the Central House, in what was called the bar-room. I went in right after him." He was then asked the following question: "State what, if anything, was said by Mrs. Middleham there, in the presence and hearing of the defendant, concerning the manner in which the homicide was committed and the connection of the defendant with the homicide?" This question was objected to as incompetent, immaterial and hearsay, and as calling for the declarations of a party not a competent witness against the defendant. The objection was overruled, and the witness answered: "Soon after I went into the house, Mrs. Middleham threw up her hands and says, 'My God! My God! he has killed my boy! He struck him right over my shoulder. See the blood of my boy on my sleeve. Take him away; I never want to see him.'" The admitting of this evidence is assigned as error. It is insisted that it is incumbent to establish, not only presence and hearing, but also understanding. In support of this objection appellant cites *Lanergan v. People*, 39 N. Y., 39. The case is not in point, as it was shown in that case that the defendant was asleep, "sound and solid," when the declaration which was admitted was made. The witness in this case was asked what was said in the "presence and hearing" of defendant. It was for the jury to determine from all the circumstances whether he heard and understood what was said. It is further objected that the declaration was a communication by the wife to the husband, and so not admissible. Appellant cites and relies upon *Campbell v. Chace*, 12 R. I., 333. That case simply holds that communications between husband and wife cannot be disclosed, although made in the presence of others. The declaration admitted in this case was not such a communication. There was no error in its admission.

II. One Dr. McAllister was introduced as a witness, and described the wound upon deceased as follows: "There was one cut in the neck. * * * * The knife had passed in and struck the jaw bone a little below the angle, and cut the artery off there, and passed into the throat, I think fully four inches and one-half. In my opinion that was a death wound. The knife described a half circle, and in an oblique direction from above downwards and forwards, extending an inch and one-half, or about that; then the knife was apparently drawn out. It cut on the external surface nearly an inch and one-half in extent. Internally it was more extensive, laying the wind pipe open an inch and one-half, so that when he breathed he made that noise that animals will when stuck by a butcher." A knife was produced in court, which was conceded to be the knife with which the wound causing the death of deceased was inflicted. The witness was then asked the following question: "Will you give your opinion as to the manner in which the knife was handled to inflict such a wound as you found in the neck of the deceased, provided it was inflicted with that knife?" This question was objected to as incompetent, not the subject of medical expert testimony, hearsay, and calling for the opinion of the witness. The objection was overruled, and the witness answered: "As near as I can tell, it was about as a butcher would stick an animal he proposed to kill." This ruling of the court is assigned as error. The appellant relies upon *Cook v. The State*, 4 Zabr., 843; *People v. Bodine*, 1 Denio, 281; and *Kennedy v. The People*, 39 N. Y., 245. Even if this evidence was not strictly admissible as expert testimony, we are unable to see in what manner the defendant could have been prejudiced by it. The evidence shows, without any conflict whatever, that the defendant killed the deceased with a knife. The evidence in question would tend simply to establish the grade of the offense as murder, either in the first or second degree, by showing that the act was done with malice and deliberation. But as the jury found

2. ——: ——: error without prejudice.

the defendant guilty of manslaughter only, he could not have been prejudicially affected by this testimony.

III. The state having rested, the defendant moved the court to require the district attorney to present the evidence of certain witnesses examined before the grand jury. The court overruled the motion as to the witnesses, Drake and Charles Davis, and sustained it as to the witness Christy Mather. It is conceded that Drake was not before the grand jury, but it is claimed that Davis was. We cannot determine that he was from the record. Appellant insists that the rule is that the prosecutor *must* call all witnesses present at the transaction, before the prisoner is .put to his defense. Appellant relies upon *Maher v. The People*, 10 Mich., 212; and *Hund v. The People*, 25 Ill., 405. *Hund v. The People* is a mis-citation, and we have not been able to find it.[*] The case of *Maher v. The People* does not sustain the position. In that case it was simply said that, when it appears that a fact has been designedly omitted by the prosecution from the series constituting the *res gestae*, or entire transaction, it would be the duty of the court to require the prosecutor to show the transaction as a whole. This statement of the law does not require the production of all the witnesses present, but simply that proof of the whole transaction shall be introduced; and even this statement is *dictum*, as the evidence under consideration was offered by the defendant, and was rejected. If an offense should be committed in the presence of one hundred persons, it surely would not be incumbent upon the prosecution to call all of them before the defendant can be put upon his defense. We discover no error in this ruling.

IV. The defendant introduced one Charles Feree, who testified that he had known deceased all his life time. The witness was then asked the following question: "You may state to the jury what was his manner—whether it was or was not reckless, or whether he was quiet." Upon the objection of the state, this ques-

*3. ——: state not bound to call all its witnesses.*

*4. ——: self-defense: dangerous character of deceased.*

* I am informed by appellant's counsel that the proper citation of this case is *Hurd v. The People*, 25 Mich., 405.—REPORTER.

State v. Middleham.

tion was excluded, and the ruling is complained of. It may be that, as bearing upon the question of self-defense, the defendant would have a right to show that he knew the deceased to be quarrelsome and dangerous. See *State v. Keene*, 50 Mo., 357; *State v. Floyd*, 6 Jones, (Law,) 392; *Wise v. The State*, 2 Kan., 419; *The People v. Edwards*, 41 Cal., 640; *The State v. Nett*, 50 Wis., 524; *The State v. Pearce*, 15 Nev., 188; *Brownell v. The People*, 38 Mich., 732; *The State v. Collins*, 32 Iowa, 36. Proof, however, that the manner of deceased was reckless, goes beyond what has been held in any case to which our attention has been directed. We do not think there was any error in excluding this evidence.

V. The defendant complains of the following instructions: "The right to defend one's self against assualt, and repelling force by force, is the first law of our nature, and this natural

5. MURDER: self-defense: obligation to retreat.

law is recognized in the laws of this state. A party who is assaulted with violence has a right to prevent harm to himself by overcoming or disabling his assailant, but, before a party assaulted has a right to resort to a deadly weapon, such as a knife, and use it in a manner dangerous to life, he must try to save himself by flight or retreating, if he may safely and reasonably do so." The evidence shows that, on the day of the homicide, the defendant and his step-son, Charles Davis, had some trouble. The evidence also tends to show that Mrs. Middleham sent for the deceased, who was not a member of the defendant's family, and that the deceased came into the dining room of the defendant's hotel, where he was at dinner, and made motions with his fist, when the defendant picked up a chair and the deceased picked up a chair, and they fought for a time, when they threw up the chairs and passed into the bar-room where the homicide was committed. No witness has been introduced who saw the closing of the affray in the bar-room. This instruction, as applied to the facts of this case, in so far as it makes it incumbent upon the defendant to retreat, is, we think, erroneous. The defendant at the time of the difficulty was in

his own house.  In Horrigan and Thompson's Cases on Self Defense, page 33, it is said: "A man, being in his habitation, is at the wall and in his castle, and is not obliged to retreat under any circumstances.  But even there he may not needlessly take life in his defense."  In *Pond v. The People*, 8 Mich., 150, (177,) it is said: "A man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life.  But here, as in the other cases, he must not take life, if he can otherwise arrest or repel the assailant."  To the same effect, see *People v. Lilly*, 38 Mich., 270, and cases cited; *DeForest v. The State*, 21 Ind., 23.  Under the circumstances disclosed, the defendant was not under obligation to retreat.  He, however, was not justified in killing deceased, unless such killing was to all reasonable appearances necessary to preserve his own life, or prevent great bodily harm.  See *State v. Kennedy*, 20 Iowa, 569; *State v. Thompson*, 9 Id., 188; *State v. Benham*, 23 Id., 154; *State v. Collins*, 32 Id., 36.  The instruction was erroneous, and we cannot say that it was not prejudicial.

REVERSED.