STATE of Iowa, Appellee,

v.

Redell CANADA, Jr., Appellant.

No. 55944.

Supreme Court of Iowa.

Nov. 14, 1973.

men to the building. The men were later identified as defendant and one Sonny Campbell.

The men entered Miss Garner's apartment, and said they were waiting for her boyfriend to return so they could obtain money and drugs from him. They searched the apartment and Campbell found some money in a dresser. He then struck Miss Garner and threatened to burn her fingers for not having told them where the money was. They also threatened to leave drugs in the apartment and call the police. They tied Miss Garner with an extension cord and gagged her with a small cloth belt. The men left the apartment about 3 o'clock p. m. During all of the time they were in the apartment, Miss Garner was able to observe the men as they were not masked and she had not been blindfolded.

After the men left, Miss Garner removed the gag and was able to telephone her boyfriend's roommate, one Cooper, who came to her apartment and released her by untying the extension cord which bound her. Miss Garner then went downstairs to friends and summoned the police. When the police arrived, Miss Garner was shown a series of photographs and identified Campbell as one of the men who had been in her apartment. Miss Garner was then taken to the police station and after she told the police that the name "Redell Canada" had been mentioned to her by two women when she had gone downstairs to summon the police, the officers produced a series of photographs from which Miss Garner identified the person depicted on one of them as defendant. At the time she identified the defendant from the photograph, defendant's name was plainly evident on the face of the photo. Subsequently, Miss Garner testified at trial of defendant that she had identified the defendant from the photo and not from the name appearing thereon.

Patrick H. Payton, of Stamatelos & Payton, West Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

REES, Justice.

Defendant was charged by indictment with the crime of robbery with aggravation in violation of sections 711.1 and 711.2, The Code, 1971. He was tried, convicted and sentenced, and now appeals. We affirm.

At about 1 o'clock, p. m., on June 27, 1972, Mallorie Garner was accosted in the hall of her apartment building by one Curtis who said he was looking for her boyfriend. Curtis then brandished a gun and forced Miss Garner to admit two other

Later in the afternoon of June 27, police officers, armed with a warrant for the arrest of both Campbell and defendant, went

to a room in the Randolph Hotel and there located the two men and a third party, one Anita Rivers. Defendant and Campbell were arrested, placed against the wall and searched, and the woman (subsequently to be placed under arrest) was directed to sit on the bed in the room. The room was small, approximately 12 feet square. A quantity of money was observed lying along the baseboard behind a wardrobe in the room. They searched between the spring and mattress of the bed, and found a .38 caliber loaded handgun. In a dresser drawer they found and seized a quantity of capsules, allegedly containing drugs. Campbell, Miss Rivers and the defendant, all under arrest, were then taken to the police station.

Prior to trial defendant filed a motion to suppress evidence of the seizure and also the introduction of the capsules, the money in the amount of $273, and the handgun. The motion to suppress was sustained insofar as it applied to the capsules, but overruled insofar as it related to the handgun and the money.

Defendant relies upon three errors which he contends require reversal:

1. The court erred in admitting the identification testimony of the witness Mallorie Garner.

2. The court erred in denying and overruling defendant's motion to suppress the handgun, the money and all evidence relative thereto, contending the same were not seized pursuant to a lawful arrest.

3. The court erred in denying defendant's motion for mistrial following testimony to the effect that when advised of his constitutional rights, and having been given the so-called "Miranda warning", defendant refused to make any statements.

I. Defendant contends that because of the unnecessarily suggestive photographic identification of defendant by Mallorie Garner, any identification testimony of Miss Garner was so tainted that it unduly prejudiced the defendant.

Mallorie Garner's testimony was to the effect that when she first identified the photograph of defendant as one of the persons who robbed her, she was at the police station; that she knew no one by the name of Redell Canada, but that his name had been suggested to her by friends. Following the mention of defendant's name to the police, a photograph of defendant was exhibited to Miss Garner, with the name "Redell Canada" clearly imprinted on the face of the photo. It is defendant's contention the fact the name "Redell Canada" was clearly visible on the face of the photo, together with the fact that the witness Garner was apparently looking for someone of that name, so tainted her identification of defendant from the photo as one of the perpetrators of the robbery, that any subsequent testimony with respect to her identification of defendant is suspect.

▮▮ The record indicates Miss Garner testified without objection to all of the circumstances surrounding her identification of defendant from the photograph, and that her in-court identification of defendant also came into the record without objection. There is no indication in the record defendant moved to strike either the in-court identification or the testimony of Miss Garner as to her out-of-court photographic identification when she testified that the name of defendant appeared on the photograph.

An objection to evidence, or a motion to strike the same, must be made at the time the record is made and when the grounds for objection or motion to strike are first apparent. State v. Boose, 202 N.W.2d 368, 369 (Iowa 1972); State v. Binkley, 201 N.W.2d 917, 919 (Iowa 1972). It was not until a police officer, one Henderson, was testifying on the stand that objection to the identification from the photograph was interjected into the record by defendant.

▮ In any event, we are not persuaded the photographic identification was impermissibly suggestive. The victim of the robbery had ample opportunity over a peri-

od of two hours to observe defendant, and her identification from the photograph followed the actual commission of the crime by only a few hours. In addition, the in-court identification of defendant by the witness Garner was independent in origin from the photographic identification which was testified to by Miss Garner. We have said that an in-court identification is admissible if it has an independent origin from an allegedly tainted out-of-court identification. In State v. Houston, 206 N.W.2d 687, 691 (Iowa 1973), we said:

"An independent review of the total circumstances leads us to conclude no showing is made upon which to hold the instantly controverted photographic identification was so impermissibly induced or suggestive as to create a very substantial likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377, 382–386, 88 S.Ct. 967, 970–972, 19 L.Ed.2d 1247 (1968); State v. Walker, 181 N.W.2d 143, 144–145 (Iowa 1970). See also Royce v. Moore, 469 F.2d 808, 812–813 (1st Cir. 1972); Dearinger v. United States, 468 F.2d 1032, 1035–1036 (9th Cir. 1972); Drewry v. Commonwealth, 213 Va. 186, 91 S.E.2d 178, 181–182 (1972)."

In *Houston* this court adopted and followed the guidelines which had been laid down by the Supreme Court of the United States in Simmons v. U. S., 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where, at page 971 of 88 S.Ct., the court said,

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Under our review of the total circumstances, we are constrained to find that the identification of defendant from the photograph was not so tainted by prejudicial suggestiveness as to merit exclusion. There are sufficient independent factors in addition to the circumstance that the name of defendant was imprinted on the photo for us to find and hold that the identification was based on Miss Garner's observations of defendant at her apartment. See United States v. Wade, 338 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

We would also reject any argument that the in-court identification of defendant by Miss Garner was violative of due process. See State v. Houston, *supra;* State v. Walker, 181 N.W.2d 143 (Iowa 1970); State v. Essary, 176 N.W.2d 854 (Iowa 1970); State v. Wisniewski, 171 N.W.2d 882 (Iowa 1969).

II. Defendant next assigns error of trial court on its overruling of defendant's motion to suppress evidence of the handgun and the money seized during a search of the hotel room incident to defendant's arrest.

There is no contention on the part of the defendant his arrest was invalid. The officers knocked on the door of the hotel room, identified themselves, were admitted at the invitation of the occupants, arrested the defendant pursuant to an arrest warrant, and also arrested the two other occupants of the room.

The money seized was in plain view without the necessity of any extended search, or for that matter any search at all to discover it. The handgun was admittedly not in plain view, as it was between the spring and mattress of the bed in the room occupied by defendant at the time of his arrest. While there is some dispute as to the exact location of the handgun, it certainly was within the area of the arrestees' immediate control. There is ample evidence to indicate the gun was in an area "from within which (the defendant or his companions) might gain possession of a weapon". The last quotation is from State

v. King, 191 N.W.2d 650, 654 (Iowa 1971), where this court also said,

"A warrantless search incident to a valid arrest, if properly limited, is reasonable. An arresting officer may search the person arrested in order to remove any weapons the latter might seek to use in order to resist arrest or effect his escape and to prevent the concealment or destruction of evidence. The arresting officer may, for the same reasons, search the area within the arrestee's immediate control, 'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence'. Chimel v. California, supra, 395 U.S. 752 at 763, 89 S.Ct. 2034 at 2040, 23 L.Ed.2d 685 at 694; State v. Brant (1967), 260 Iowa 758, 762, 150 N.W.2d 621, 624."

The State insists defendant failed to preserve for appeal the court's ruling on his objections to the introduction of the money and the gun into the record evidence. In light of our conclusions above, we need not pass on this question.

III. Defendant further assigns as error the overruling by the trial court of his motion for mistrial following testimony of the police officer to the effect that when advised of his constitutional rights, and having been given the so-called "Miranda warning", the defendant refused to make a statement.

The record indicates that the so-called "Miranda warning" was given to the defendant and his companions in the hotel room. Following testimony of the giving of the "Miranda warning", the record discloses the police officer testified as follows:

"Q. Did they state whether or not they understood these rights?

"A. Yes, they did.

"Q. Did they want to say anything at that time?

"A. No, they didn't."

Defendant supports this proposition by urging us to consider the rationale in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). This court adopted the *Griffin* rationale in State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518. Both *Griffin* and *Johnson* forbid comment by the prosecution or any reference by the court to the accused's failure to testify. Defendant would have us extend the rule in *Griffin* and *Johnson* to cases in which comments at trial by a witness pertain or refer to accused's conduct during apprehension or arrest.

■■ In State v. Myers, 258 Iowa 940, 950, 140 N.W.2d 891, 897, this court said,

"It has been repeatedly held in this state that the admission of testimony as to the conduct of a defendant when first accused of a crime is not objectionable. State v. Johnson, 221 Iowa 8, 19, 264 N. W. 596, 267 N.W. 91; State v. Benson, 230 Iowa 1168, 1171, 300 N.W. 275; State v. Beckner, 197 Iowa 1252, 1258, 198 N.W. 643; State v. Middleham, 62 Iowa 150, 151, 17 N.W. 446; State v. Pratt, 20 Iowa 267, 269, 270. We have held that, while the weight to be given this evidence is slight, it is the jury's function to value it in view of all other circumstances."

Our pronouncement in State v. Myers was subsequent to *Griffin* and *Johnson, supra,* and is not, in our judgment, contradictory of the *Griffin* and *Johnson* rationale.

■ In the matter before us here, reference was made by the testifying officer once to defendant's silence following the "Miranda warning". There was no comment by counsel or the court with reference thereto other than defense counsel's objection in chambers. A fair reading of the record would indicate that the questions put to, and the answers of the witness, were designed only to relate the actions of the defendant at the time of his

arrest, and there was no further reference to his refusal to make any statement at the trial.

Defendant insists that the privilege against self-incrimination protects a defendant from providing the State with evidence of a testimonial or communicative nature, and relies upon State v. Holt, 261 Iowa 1089, 156 N.W.2d 884, 889 (Iowa 1968) and Schmerber v. California, 384 U. S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We are here, however, not faced with a question of real or physical evidence as opposed to testimony or communication; in reality, the testimony of the police officer dealt only with his observations of what was said and done by defendant at the time of his arrest. We feel the pronouncements of this court in State v. Myers, *supra,* adequately answer the question, and conclude the trial court did not err in overruling defendant's motion for a mistrial.

We find no error in the record, and affirm the trial court.

Affirmed.

MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and HARRIS, JJ., concur.

RAWLINGS, J., concurs, specially joined by MASON and McCORMICK, JJ.

RAWLINGS, Justice (concurring specially).

I agree with the result reached by the majority in Division III but am unable to accept the rationale or reasoning upon which it is foundationed.

In this regard the record reveals Officer Dolan was questioned, on direct examination, regarding his giving of so-called Miranda warnings to defendant Canada and other arrestees. These are the inquiries directed to Dolan and his answers:

"Q. Did they state whether or not they understood these rights? A. Yes, they did.

"Q. Did they want to say anything at that time? A. No, they didn't."

I. At the outset it appears to me the majority mistakenly equates defendant's arrest-related "silence" with "conduct".

As here applied "silence" denotes absence of oral communication. On the other hand "conduct" relates to personal behavior or mode of physical action. Thus the two are instantly distinct and severable. See Black's Law Dictionary, "Conduct", n. at 367, and "Silence" at 1554 (rev. 4th ed. 1968); Miranda v. State of Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 1624–1625, 16 L.Ed.2d 694 (1966). See also United States v. Dionisio, 410 U. S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); Gilbert v. State of California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed. 2d 1178 (1967); Schmerber v. State of California, 384 U.S. 757, 760–765, 86 S.Ct. 1826, 1830–1833, 16 L.Ed.2d 908 (1966); 2 Underhill's Criminal Evidence, §§ 372–373 (5th ed., Herrick).

II. I also submit, in light of the fact no apparent admission or confession was voiced by the accused at time of arrest, the above noted questioning of Dolan had only one purpose, i. e., to impermissibly impress upon the jury the fact that defendant had tacitly admitted his guilt by silence when accorded an opportunity to speak. See State v. Kelsey, 201 N.W.2d 921, 927 (Iowa 1972).

In the same vein it is to me apparent the questions put to Dolan were intended and served, in essence, to penalize defendant for exercising his time-of-arrest silence privilege. See Miranda v. State of Arizona, *supra*; State v. Peterson, 189 N.W.2d 891, 898–901 (Iowa 1971), (Mason, J., dissenting); Johnson v. Patterson, 475 F.2d 1066, 1068 (10th Cir. 1973); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969);

People v. Severance, 43 Mich.App. 394, 204 N.W.2d 357, 358–360 (1972).

Noticeably, however, defense counsel voiced no objection to the last above stated question put to Dolan. Neither was a motion timely made to strike the answer thereto or for a mistrial order. This means error was not instantly preserved for appellate review and defendant cannot now be heard to complain. See State v. Williams, 207 N.W.2d 98, 109 (Iowa 1973); State v. Houston, 206 N.W.2d 687, 690–691 (Iowa 1973); State v. Schurman, 205 N.W.2d 732, 735 (Iowa 1973); State v. Bruno, 204 N.W.2d 879, 884 (Iowa 1973). But see Henry v. State of Mississippi, 379 U.S. 443, 446–451, 85 S.Ct. 564, 567–569, 13 L.Ed.2d 408 (1965); State v. Means, 211 N.W.2d 283 (Iowa, opinion filed October 17, 1973).

I therefore concur in the result.

MASON and McCORMICK, JJ., join this special concurrence.