STATE of Iowa, Appellee,

v.

Phet BACCAM, Appellant.

No. 90–817.

Court of Appeals of Iowa.

Aug. 27, 1991.

Alfredo Parrish of Parrish, Kruidenier & Exline, Des Moines, for appellant.

Bonnie Campbell, Atty. Gen., Mark Joel Zbieroski and James Kivi, Asst. Attys. Gen., and Tammy J. Buckingham, County Atty., for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HABHAB, Justice.

Phet Baccam was accused of robbing and killing a convenience store clerk. He was charged with first-degree murder and first-degree robbery. An initial trial on these two charges resulted in a mistrial because the jury was unable to reach a unanimous verdict. Following a second trial, a jury found Baccam guilty of first-degree mur-

der and first-degree robbery. Baccam has appealed from the resulting convictions.

Baccam contends he should have been granted a mistrial or a new trial after a police witness volunteered certain testimony referring to Baccam's postarrest silence. He contends this testimony was an improper comment on his exercise of his fifth-amendment right to remain silent and to avoid self-incrimination.

Baccam next contends the district court abused its discretion, following the initial mistrial ruling, by denying his request for a study at State expense of the jurors in the initial trial. After this request was denied, Baccam's attorney performed such a study at his own expense. Baccam contends the study gave his attorney potentially-valuable information about how to conduct the second trial. He asserts the study was important to assist counsel in the second trial. He argues it should have been provided at State expense due to his indigency.

Additionally, Baccam contends he was denied a fair trial because the State violated its duty under *Brady v. Maryland* to disclose exculpatory evidence in a timely fashion. The alleged exculpatory evidence concerned alterations of a time sheet from Baccam's place of employment for April 3, 1989, sixteen days before the crime. The significance of April 3 is a State witness claimed to have seen Baccam at about noon on that date at the store which was later robbed. Since the store was in Benton County, it would have been difficult for Baccam to have been there at noon on April 3 if he had worked all day at his Des Moines workplace. An initial time sheet showed that Baccam had worked eight hours on April 3, but an altered time sheet showed that he had worked only three hours. Baccam apparently argues the fact an alteration occurred was exculpatory because it would have permitted him to call into question the three-hour time sheet. The State responds, among other things, that it did disclose the alteration to Baccam as soon as it knew.

Baccam also contends the district court erred by excluding his proposed impeachment evidence concerning drug use by two State witnesses. The two witnesses were Scott Schminkey, a friend of Baccam, and Scott's sister Rebecca. Scott Schminkey testified Baccam admitted the crime to him shortly after it occurred. Rebecca Schminkey testified that Scott repeated Baccam's admission to her. Baccam sought to impeach the testimony of both Schminkeys by suggesting that their memory and comprehension were impaired by drug usage. The court allowed Baccam to inquire only about drug use during a one-week period around the date of the crime. Baccam argues he should have been allowed to inquire about drug use covering a period of at least a year.

Finally, Baccam contends he was denied his right to confront and cross-examine a State witness, and thus was denied a fair trial, when the witness exercised his fifth-amendment right to avoid self-incrimination. The witness was a friend of Baccam who was present at the Schminkey home on the date Baccam allegedly admitted the crimes. The witness exercised his fifth-amendment right with respect to drug use and prior perjury about drug use.

## I.

When a constitutional issue is presented, the evidence relevant to that issue is reviewed de novo. *State v. Elmore*, 201 N.W.2d 443, 445 (Iowa 1972). When constitutional safeguards are involved, the court is obliged to make its own evaluation of the totality of the circumstances under which rulings on those rights were made. *State v. Thomas*, 205 N.W.2d 717, 721 (Iowa 1973).

## II.

The primary issue is whether the trial court erred in failing to grant a mistrial after a police officer commented, on the stand, about the defendant's silence following his arrest and *Miranda* warning. The defendant relies primarily on the United States Supreme Court case of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle*, the defendants were arrested, given their *Miranda*

warnings, and chose to make no postarrest statement with regard to their involvement in the crime. On cross-examination, the prosecutor repeatedly questioned the defendants why, if they were innocent, did they not offer an explanation at the time of arrest. The court overruled objections to this line of questioning and additionally allowed the prosecutor to argue the defendant's postarrest silence to the jury. *Id.*, 426 U.S. at 613–15, 96 S.Ct. at 2243, 49 L.Ed.2d at 95–96. Upon review, the United States Supreme Court determined the *Miranda* decision "compelled rejection" of the contention that such questioning and argument are proper means of impeachment. *Id.*, 426 U.S. at 617, 96 S.Ct. at 2244, 49 L.Ed.2d at 97. The *Doyle* decision clearly states it does not comport with due process when a prosecutor calls attention to a defendant's exercise of his constitutional rights. *Id.*

However, following the *Doyle* case, the Supreme Court issued another opinion which explained and distinguished *Doyle*. *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). The prosecutor in the *Greer* case cross-examined the defendant as follows:

Q. Mr. Miller, How old are you? A. 23.

Q. Why didn't you tell this story to anybody when you got arrested?

*Greer v. Miller*, 483 U.S. at 759, 107 S.Ct. at 3105, 97 L.Ed.2d at 626.

The Supreme Court pointed out that for a constitutional violation to occur under *Doyle*, the defendant must initially receive the "implicit assurance" of the *Miranda* warning. It found that Miller had received such a warning and thus the *Doyle* prerequisite had been met. *Greer v. Miller*, 483 U.S. at 763, 107 S.Ct. at 3108, 97 L.Ed.2d at 628. Initially, the Court reviewed cases where *Doyle* had been applied and noted that in each of these cases the trial court had permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence. *Greer v. Miller, id.* (citations omitted). The Court then recognized the trial court in *Greer* had not permitted the type of inquiry which *Doyle* forbids. *Id.* The

court in the *Greer* case sustained the objection to the postarrest silence immediately and no further questions or arguments occurred with respect to the defendant's postarrest silence. Additionally, the court instructed the jury to disregard any questions to which an objection was sustained. *Id.* The situation that occurred in the *Greer* case is very much like the immediate case.

The defendant argues *State v. Porter*, 283 N.W.2d 351 (Iowa 1979), is controlling. We disagree and find these circumstances to be more analogous to *State v. Canada*, 212 N.W.2d 430 (Iowa 1973). Although *Canada* was decided prior to *Doyle*, the analysis used by the Iowa Supreme Court in *Canada* was similar to the analysis used by the United States Supreme Court in *Greer*.

In the immediate case, the only mention of defendant's post-*Miranda* silence occurred during the examination of Detective Peter Wright. The following exchange occurred:

Q. [Prosecutor]. Did you transport the defendant to the Des Moines Jail at that time? A. To the Des Moines City Jail, yes.

Q. And what was done there? A. He was booked into the Des Moines City Jail by Des Moines Police officers and he was advised of his constitutional rights by myself. Attempt was made to interview, but he declined to be interviewed.

Following defendant's objection, outside the presence of the jury, the trial court immediately offered to strike Wright's answer and admonish the jury to disregard the answer. Defendant requested neither of these remedies, and at the time defendant requested a mistrial he neither asked that the testimony be struck nor did he ask that the jury be admonished. It is important for purposes of this analysis to note that other than this single comment, the jury did not hear any other testimony regarding the defendant's post-*Miranda* silence. Additionally, the defendant requested and received a jury instruction instructing the jury it is not mandatory a defendant submit to an interview and no guilt

may be inferred therefrom. The defendant's post-*Miranda* silence was not used against him or used as a tool for impeachment. There is no reason to believe the jury did not obey the curative instructions. *Greer v. Miller,* 483 U.S. at 766 n. 8, 107 S.Ct. at 3109, n. 8, 97 L.Ed.2d at 630–631 n. 8. We find the trial court did not abuse its discretion in refusing to grant a mistrial.

### III.

 The defendant next contends the trial court abused its discretion when it denied the defendant's application for a postverdict study at state expense. The standard of review with regard to this issue is abuse of discretion. The trial court's decision is one of discretion and will not be reversed unless that discretion is abused. *State v. Coker,* 412 N.W.2d 589, 593 (Iowa 1987).

Because the defendant's first trial ended in a mistrial, his counsel requested a jury study done at state expense. Defendant argues this was necessary in order for his attorney to better represent him in the second trial. The defendant claims his sixth-amendment right to counsel was violated because without the investigation, his attorney would be unable to render him effective assistance of counsel. Because the trial court would not authorize payment for this study, defendant's counsel paid for the study himself and then requested reimbursement. Assuming counsel conducted the study himself, the funds requested would be viewed as attorney fees. Generally, direct appeal is not the proper vehicle by which to protest the refusal of the trial judge to award attorney fees. Our supreme court in *Furey v. Crawford County,* 208 N.W.2d 15 (Iowa 1973), stated:

> the proper mode to obtain review of trial court's determination of reasonable compensation is to petition this court for an original writ of certiorari, alleging trial court exceeded its jurisdiction or otherwise acted illegally

*Parrish v. Denato,* 262 N.W.2d 281, 282 (Iowa 1978) (quoting *Furey v. Crawford County,* 208 N.W.2d at 19).

We assume for purposes of this appeal this expense is costs. Therefore, we are restricted by our scope of review. We may only reverse the trial court on this issue if we find an abuse of discretion. In reviewing the records, we note the trial court was not unreasonable and did not refuse the defendant with regard to many of his monetary requests. There is no evidence which would lead us to believe the trial court abused its discretion with regard to this matter and therefore affirm the trial court on this issue.

### IV.

 The defendant next contends the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He claims this violation occurred because the State failed to disclose material evidence that "possibly" or "might" have affected the outcome of the trial. The defendant claims he was denied a fair trial in violation of the fifth, sixth and fourteenth amendments of the United States Constitution because the State failed to disclose a document to the defendant which represented the number of hours defendant had worked on April 3, 1989, at his place of employment. The document had been altered from eight hours to three hours. The defendant contends this is significant because a State's witness would testify he saw Baccam at the Pemco Fast Break on April 3, 1989.

Suppression by the prosecution of evidence favorable to an accused upon request is a violation of due process, irrespective of the good or bad faith of the prosecution. *Id.,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

Defendant ardently argues the case of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), is applicable in this situation. However, as our supreme court pointed out in *State v. Anderson,*

> The Supreme Court in *Bagley,* however, abandoned the *Agurs* test of what "might have affected the outcome" and adopted a test of "reasonable probability". (citations omitted). Under the Bag-

ley rule, undisclosed evidence is material for *Brady* purposes only if the defendant shows a reasonable probability that, if the evidence had been produced, the outcome would have been different.

*State v. Anderson,* 410 N.W.2d 231, 233 (Iowa 1987). Reversal is only required "if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481, 494 (1985).

The defendant here does not contend there was a probability or a possibility the jury would have acquitted him had the information been available to him. The defendant claims the withheld evidence left him unprepared to refute the testimony of a State's witness who testified the defendant was only at work for three hours on April 3, 1989, sixteen days prior to committing the crime. The defendant further did not request a continuance after receiving the information in order to better prepare. In light of the totality of the circumstances, defendant fails to show a reasonable probability that the outcome would have been different. We accordingly affirm.

## V.

The defendant next raises the concern the defendant was prejudiced when the district court denied, for juror consideration, an offer of proof concerning the use of drugs by key witnesses.

The trial court has wide discretion in ruling on the admissibility of evidence; its decision will not be disturbed unless there is a clear and prejudicial abuse of discretion. *Henkel v. R. & S. Bottling Co.,* 323 N.W.2d 185, 193 (Iowa 1985).

Defendant was cross-examining a State's witness who claimed the defendant told her brother he had shot a woman in the head three times. During the cross-examination, defendant attempted to question the woman regarding her drug use. Upon the State's objection, the trial court limited the questions regarding the witness's drug use to the time period surrounding the murder. The defendant made an offer of proof about the witness being unable to recall her drug use and suggested it be submitted to the jury. The trial court refused, standing by its earlier ruling limiting questions about the witness's drug use to the time of the incident. "[D]etermination of the relevance of the evidence rest within the sound discretion of the trial court and will be reversed only upon a showing that such discretion has been abused." *State v. Gordon,* 354 N.W.2d 783, 784 (Iowa 1984). We do not find the trial court abused its discretion and affirm on this issue.

## VI.

The defendant finally argues his fifth, sixth, and fourteenth-amendment rights were violated when he was prevented from cross-examining the State's witness because the witness invoked his fifth amendment right against self-incrimination. Because we are again dealing with constitutional safeguards our review is de novo. *State v. Thomas,* 205 N.W.2d 717, 721 (Iowa 1973).

Defendant claims the witness, Mr. Rahm, was a critical witness for the state and that the invocation of his fifth-amendment privilege "prevented defendant from cross-examining him to determine the truth of his testimony and from developing relevant evidence that may be exculpatory to defendant's case." We have reviewed all of the facts presented to us and find defendant's claim he was denied his right to confront the witness is without merit. We affirm the trial court in all respects.

AFFIRMED.