**STATE of Iowa, Appellee,**

v.

**Natalie Ann EICKELBERG, Appellant.**

**STATE of Iowa, Appellee,**

v.

**David Scott MERCER, Appellant.**

No. 96–808.

Supreme Court of Iowa.

Dec. 24, 1997.

Rehearing Denied Jan. 30, 1998.

Timothy A. Lynch of Van Orsdel, Lynch, Rouse & Curran, L.C., Des Moines, for appellant Mercer.

F. John Spellman, Des Moines, for appellant Eickelberg.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kim Griffith, Assistant County Attorney, for appellee.

SNELL, Justice.

Defendants appeal from their convictions for being in the immediate possession or control of a firearm while participating in the manufacture of marijuana in violation of Iowa Code sections 124.401(1)(d) and 124.401(1)(e) (1995). We affirm.

I. Background Facts and Proceedings

On March 18, 1995, defendant David Mercer made an emergency 911 telephone call requesting medical assistance for his girlfriend, defendant Natalie Eickelberg, who was experiencing breathing problems. Paramedics responded to Mercer's home, as did an officer from the Cedar Falls police department. Upon arrival, the paramedics and the officer were directed to a bedroom where defendant Eickelberg was lying on the bed and defendant Mercer was standing at the foot of the bed. The defendants informed the paramedics that Eickelberg had taken ephedrine, a drug contained in many over-the-counter medications for the relief of hay fever, asthma, and nasal congestion; and that she was having difficulty breathing. The police officer departed after ensuring that his assistance was no longer needed. Shortly after the officer left, defendant Mercer informed the paramedics that Eickelberg had actually taken methamphetamine and that he had also taken the drug.

The paramedics then contacted the police department, requesting further assistance. Two officers arrived at the residence a short time later and found both defendants in the living room of the home. The officers interviewed the defendants and Mercer consented to a search of the home. An officer asked Mercer whether any drugs were located on the premises. Mercer led an officer to the bedroom closet wherein the officer found marijuana and drug paraphernalia concealed inside a camera case. The officer also observed and removed a loaded revolver in a gun case sitting on the closet shelf. A later search of the bedroom closet also revealed an unloaded shotgun on the floor of the closet.

When the officer returned to the living room, he saw Eickelberg emerge from the basement. Mercer accompanied an officer on a search of the basement, which led to the discovery of five marijuana plants and evidence of a growing operation being established. The police also found an unloaded shotgun stored in a gun case on a gun rack in the same room as the marijuana plants. Both defendants admitted their knowledge of the marijuana growing in the basement.

The State charged defendants with several drug-related charges, some of which were dismissed prior to trial. Following a bench trial, defendants were found guilty of manufacturing marijuana while in the immediate possession or control of a firearm in violation of Iowa Code sections 124.401(1)(d) and 124.401(1)(e) and possession of marijuana in violation of Iowa Code section 124.401(3).

## II. Issues on Appeal

On appeal, defendants argue that the trial court erred in finding that their actions were violative of Iowa Code section 124.401(1)(e), a penalty-enhancement provision applicable when a defendant is found to be in immediate possession or control of a firearm. They first argue that the trial court failed to distinguish between immediate possession or control and constructive possession. Second, defendants argue that even if they were in immediate possession or control of a firearm, the court failed to consider whether the possession or control occurred while the defendants were participating in the manufacturing of marijuana. They maintain that participation under section 124.401(1)(e) requires more than just proof of the existence of marijuana plants growing in the basement. Rather, they contend the State must prove they were doing some affirmative act in connection with the growth of marijuana while in the immediate possession or control of a firearm in order to find a violation of the section.

## III. Scope of Review

▮ The issues on appeal involve both issues of law and fact. Issues of statutory interpretation and application are reviewed for errors at law. Iowa R.App. P. 4; *State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994); *State v. Bond*, 493 N.W.2d 826, 828 (Iowa 1992). When reviewing such issues we are not bound by the trial court's determinations of law. *Bond*, 493 N.W.2d at 828. Defendants also contend that the court's factual conclusions are not supported by substantial evidence. With regard to this issue, we review the evidence to determine whether a rational trier of fact could have found the defendant guilty of the offense charged. *State v. Robinson*, 288 N.W.2d 337, 339 (Iowa 1980).

## IV. Immediate Possession or Control of a Firearm

Iowa Code section 124.401(1)(e) is a penalty-enhancement provision for use in conjunction with drug possession, distribution and manufacturing offenses set forth in section 124.401(1). It provides:

> A person in the immediate possession or control of a firearm while participating in a violation of this subsection shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended.

Iowa Code § 124.401(1)(e).

The district court ruled that both defendants were in the immediate possession or control of a firearm while participating in a violation of the subsection, and thus doubled their sentences.

In *State v. Mehner*, 480 N.W.2d 872 (Iowa 1992), we upheld section 124.401(1)(e) against a constitutional challenge. The defendant alleged that the statutory requirement of immediate possession or control was facially vague. We acknowledged that the word possession has more than one meaning and can be used interchangeably to describe actual possession and constructive possession. *Mehner*, 480 N.W.2d at 878. We held, however, that "when the word immediate is used to modify the word possession, the term immediate possession becomes clear without double meaning." *Id.* We concluded that immediate possession means actual possession and approved of a jury instruction defining actual possession as "direct physical control of something on or around [one's] person." *Id.* at 878–79; *see also* Iowa Crim. Jury Instructions 200.47 (1990).

We have considered the meaning of the words possession and control in other cases. In *State v. Rudd*, 454 N.W.2d 570, 571 (Iowa 1990), we stated that "[p]ossession is actual when the [item is] found on the person of the accused." We noted that possession is constructive when "the accused maintains dominion and control of the place where the substances are found" and further divided control into direct and indirect control. *Rudd*, 454 N.W.2d at 571. We found that control is direct "when the accused is in such close proximity to the substances as to claim immediate dominion over them." *Id.* Control is indirect "when the accused maintains or closely shares exclusive dominion over the premises where the substances are found." *Id.* In *Rudd*, we found the defendant was in constructive possession of a controlled sub-

stance when police found her sitting on a bed and drugs and drug paraphernalia sitting on the headboard of the bed, an area within her immediate control. *Id.* at 571–72; *see also State v. Parrish*, 502 N.W.2d 1, 3 (Iowa 1993) (citing with approval definitions regarding possession and control set forth in *Rudd* ).

As evidenced by these cases, especially by the definitions set forth in *Rudd*, we have construed control as akin to constructive possession. We have held that direct control exists when the suspect is in such close proximity to the item in question as to claim immediate dominion over the item. *See Rudd*, 454 N.W.2d at 571. From these definitions, we find that immediate control, as used in section 124.401(1)(e), is the same as direct control as defined in our prior cases. Thus, while immediate possession, as found in section 124.401(1)(e), may require the firearm to be located on the defendant's person, immediate control necessitates only that the firearm be in such close proximity to the defendant as to enable him to claim immediate dominion over the firearm.

We now turn to the task of determining what constitutes immediate control in specific factual situations. In *Mehner*, we discussed various sources which can be utilized in divining the meaning of a statutory term. *See Mehner*, 480 N.W.2d at 878 (citing the use of a standard dictionary and decisions of other jurisdictions in determining the meaning of immediate possession). The State relies on a definition of immediate control set forth in the United States Supreme Court case of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We find this standard both helpful and persuasive.

In *Chimel*, the Court examined the permissible parameters of a search conducted incident to a suspect's arrest. The Court noted that "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." *Chimel*, 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Similarly, the Court found that "the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." *Id.* at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The Court defined the area which may be searched incident to arrest as "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* The Court limited the definition of immediate control, however, noting that the police's power to search under this rule would not extend to rooms other than the one in which the arrest occurred nor to all desk drawers and other closed or concealed areas within the room. *Id.*

Cases since *Chimel* have helped define the limits of the "immediate control" area. For example, in *New York v. Belton*, the Court found that the search of the passenger compartment of an automobile, when the occupant(s) are lawfully under arrest, comports with the standard set forth in *Chimel. New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 774–75 (1981). Thus, even though the defendant was removed from the vehicle and standing several feet away from the vehicle, the Court found that the passenger compartment of the automobile was still within his immediate control. *Id.* at 462, 101 S.Ct. at 2865, 69 L.Ed.2d at 776. Our court has previously considered the breadth of the standard set forth in *Chimel.* In *State v. Canada*, 212 N.W.2d 430 (Iowa 1973), officers entered a hotel room occupied by the defendant pursuant to a warrant for his arrest. The defendant and the other occupants were placed against the wall and searched. The police then searched between the spring and mattress of the bed and found a handgun. On appeal, our court upheld the search of the bed and the seizure of the handgun, holding that the gun "certainly was within the area of the arrestees' immediate control." *Canada*, 212 N.W.2d at 433.

The dictionary defines immediate as "being near at hand: not far apart or distant." Webster's Third New International Dictionary 1129 (unabr. ed.1993). These sources are consistent with our court's definition of direct control in prior cases.

We agree with the district court's finding that the guns found in the bedroom of the defendants' home were in their immediate possession or control.[1] The immediate control of the weapons in the bedroom closet was established by the testimony of the paramedics and police officer who were in the bedroom with Eickelberg and Mercer at the time of the initial response to the 911 call. The testimony given by the paramedics and the officers present in the home that evening varies with regard to the distance between the bed and the closet and the size of the bedroom. Testimony regarding the distance between the bed and the closet ranged from three to six feet. One officer testified he thought it would be possible to reach from the bed to the closet door, without even taking a step. The size of the bedroom was estimated between eight by eight feet to fourteen by fourteen feet. Testimony regarding whether the closet door was open or shut at the time both defendants were in the bedroom was inconclusive; the witnesses were not able to recall. While neither defendant had actual possession of the weapons while they were in the bedroom, they were "in such close proximity to the [weapons] as to claim immediate dominion over them." *Rudd*, 454 N.W.2d at 571. All it would have taken for the defendants to gain actual possession of the weapons was to take one or two large steps toward the closet.

Defendants argue that the statute is only intended to increase the sentence of a person who is *carrying* a firearm while participating in the delivery or manufacture of a controlled substance. They cite a United States Supreme Court case interpreting a federal statute to support this argument. *See Bailey v. United States*, 516 U.S. 137, 150, 116 S.Ct. 501, 509, 133 L.Ed.2d 472, 484 (1995) (holding that federal statute which criminalized "use" of a firearm during a drug trafficking offense required a showing of actual employment of the firearm by the defendant). It is important to note, however, that the Iowa statute requires immediate possession or control, while the statute interpreted by the Supreme Court required the defendant to use or carry a firearm while committing the drug offense. Had our legislature wished to restrict this enhanced penalty only to cases of actual use or carrying of a weapon, it could have done so.

## V. While Participating in a Violation of Subsection 124.401(1)(e)

We have concluded that defendants were in immediate possession or control of the firearms located in the bedroom. However, we must also determine whether defendants were in immediate possession or control of those firearms while participating in the manufacture of marijuana, the offense with which they were charged under section 124.401(1). Defendants argue that the district court erred by not completing the analysis under section 124.401(1)(e) because the court did not consider whether the possession or control of the firearms occurred while the defendants were participating in the manufacture of marijuana.

Manufacture is defined as follows:

[T]he production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container....

Iowa Code § 124.101(16).

Defendants argue that because no evidence was introduced that they were participating in manufacturing activities when the marijuana plants were discovered, the district court incorrectly concluded that they were in immediate possession or control of the firearms

---

1. We find the fact that the shotgun was unloaded to be inconsequential to our analysis of this case. We have previously held that to be considered a firearm, the weapon must be "clearly designed to be capable of propelling a projectile by explosive force." *State v. Hemminger*, 308 N.W.2d 17, 21 (Iowa 1981). It does not appear from the language of section 124.401(1)(e) that the firearm must be loaded to fall within the parameters of the statute. Intent to inflict harm is not a necessary element of section 124.401(1)(e), which further negates the argument that the weapon must be loaded. *See State v. Pinckney*, 306 N.W.2d 726, 729 (Iowa 1981).

while manufacturing marijuana. We note, however, that while the defendants may not have been planting or harvesting the plants when discovered, the definition of manufacture includes production and propagation as well, words which connote the mere growing of plants. We see no need for the State to prove that defendants were actively engaged in the planting or harvesting of the marijuana plants. No affirmative act on their part was necessary to establish that the manufacture of marijuana was occurring on the premises. The defendants admitted their knowledge of the growing facility in the basement. This admission, in addition to the evidence of a marijuana facility and live plants on the premises, is sufficient to support the district court's finding that the defendants were participating in the manufacture of marijuana.

We also see no need to require as direct a connection between the drug offense and the immediate possession or control of a firearm as defendants suggest. The testimony of the paramedics and the police officer regarding the proximity of the weapons in the bedroom closet to defendants is sufficient to support the finding that defendants were in the immediate possession or control of a firearm while participating in a drug offense defined by section 124.401(1). The fact that defendants established a marijuana growing facility in their basement transformed their entire home into a facility for the manufacture of marijuana. Therefore, we conclude that the district court acted properly in applying the penalty-enhancement provision.

**AFFIRMED.**

All justices concur except LAVORATO and NEUMAN, JJ., who concur in result only.