STATE of Iowa, Appellee,

v.

Karen Marie ATKINSON, Appellant.

No. 99–0180.

Supreme Court of Iowa.

Nov. 16, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, and Charles A. Stream, County Attorney, for appellee.

LARSON, Justice.

Karen Atkinson was convicted of possession of methamphetamine with intent to deliver in violation of Iowa Code section 124.401(1)(b)(7) (1997). She appealed, and the court of appeals affirmed. On our further review, we vacate the decision of the court of appeals and remand to the district court.

## I. Facts and Prior Proceedings.

On October 4, 1998, Karen Atkinson called her former husband, Scott Atkinson, and asked him for a ride to Oskaloosa. Scott agreed to take her, but he doubted whether his car would make the trip. He contacted a friend and arranged to swap cars for the trip. The defendant accompanied Scott to make this exchange. Scott testified he moved his keys and his "fanny pack" to the friend's car, a station wagon. He testified he placed the fanny pack under the driver's side of the front seat. Karen testified she could not recall specifically whether Scott had his fanny pack with him because "[h]e almost always has his [fanny pack] with him so I wouldn't have taken note of [whether he had] it or not." Scott and Karen drove to Oskaloosa.

In Oskaloosa they were stopped by an officer of the Oskaloosa Police Department who observed their car make an illegal turn. The officer asked Scott to leave the station wagon to go to the patrol car. Karen remained in the front passenger seat. From his patrol car, the officer observed Karen constantly moving in the front seat, "reaching for something." The officer discovered Scott's license was suspended, and he arrested Scott on that charge. The officer then approached the defendant in the station wagon, informed her that Scott was under arrest, and asked her to get out of the car. Another officer noticed a black purse in the middle of the front seat. The officers searched the purse because it had been next to the driver. This search revealed a glass pipe for smoking methamphetamine. The defendant admitted the purse and its contents were hers. She was arrested for possession of drug paraphernalia, but that is not the charge involved in this appeal. A search of the vehicle revealed Scott's fanny pack under the driver's seat. That is the subject of this case.

A search of the fanny pack revealed approximately seventeen grams of methamphetamine, a scale, and an organizer. An officer testified the packaging and amount of drugs were consistent with a sale, rather than mere use, of methamphetamine. A search of Scott revealed a pager and $104 in cash. Scott pled guilty to possession of methamphetamine, under five grams, with intent to deliver and was sentenced to a prison term not to exceed ten years. The defendant's case went to trial, and the jury found her guilty of possession of methamphetamine, in excess of five grams, with intent to deliver. The court sentenced her to a term not to exceed twenty-five years.

At trial Scott testified on behalf of the defendant. He said the fanny pack and the drugs in it were his and that he intended to deliver them. However, he testified under cross-examination that the defendant knew there were drugs in the fanny pack:

Q: All right. Did the defendant know—Karen Atkinson know—there [were] drugs in that fanny pack?

A: Yes.

Q: Have an idea what type—Did she know what type of quantity was in there?

A: It would be fair to say that there was a somewhat substantial quantity there.

Q: But did Karen know that?

A: Yes.

The defendant bolstered Scott's testimony that she knew there was methamphetamine in his fanny pack when she testified:

Q: Would you be aware of what's in his fanny pack at any given time?

A: I know that he has in the past kept drugs in there.

Q: And how do you know that?

A: Because he has sold drugs to me before and has had them in that bag.

## II. Scope of Review.

■ We review challenges to the sufficiency of the evidence for errors at law. We uphold a finding of guilt if "substantial evidence" supports the verdict. "Substantial evidence" is evidence upon which a rational finder of fact could find a defendant guilty beyond a reasonable doubt. We review the facts in the light most favorable to the State. Furthermore, we consider not only evidence which supports the verdict, but all reasonable inferences which could be derived from the evidence.

State v. Rohm, 609 N.W.2d 504, 509 (Iowa 2000) (citations omitted).

## III. The Possession Issue.

■ The defendant contends there was insufficient evidence of her possession of the methamphetamine. This is a constructive–possession case: actual possession requires substances to be found on the defendant's person, and that was not the case here. See State v. Rudd, 454 N.W.2d 570, 571 (Iowa 1990).

We have said constructive possession is established by showing

(a) that the accused exercised dominion and control ... over the contraband,

(b) that he had knowledge of its presence, and

(c) that the accused had knowledge that the material was a narcotic.

State v. Reeves, 209 N.W.2d 18, 21 (Iowa 1973). Reeves, which involved drugs found in a building, discussed the proof required and the inferences that may be drawn:

If the premises on which such substances are found are in the exclusive possession of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over such substances may be inferred.... But where the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the substances on the premises.

Id. at 23.

■ When the "premises" in which drugs are found is a motor vehicle, knowledge by the occupants as to the presence and nature of the contraband might erroneously be assumed based simply on their proximity to the drugs. Specific rules have therefore been developed to apply in motor vehicle cases. See, e.g., Emile F. Short, Annotation, Conviction of Possession of Illicit Drugs Found in Automobile of Which Defendant Was Not Sole Occupant, 57 A.L.R.3d 1319 (1974) [hereinafter Short]. While some cases recognize a rebuttable presumption of possession if the defendant is the owner or operator of the vehicle, 25 Am.Jur.2d Drugs and Controlled Substances § 149, at 335 (1996), the defendant in this case was neither an owner nor an operator.

The case on which the A.L.R. annotation is based, *Payne v. State*, 480 S.W.2d 732 (Tex.Crim.App.1972), *overruled on other grounds by Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987), is similar to the present case. In *Payne* the defendant was a passenger in a vehicle in which drugs were found in a matchbox on the driver's side of the dashboard. The Texas Court of Criminal Appeals held the state had failed to show the defendant exercised the necessary control over the drugs. Quoting an Oklahoma case, the court said: " 'Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed.' " *Id.* at 734 (quoting *Brown v. State*, 481 P.2d 475, 477 (Okla.Crim.App. 1971)); *see also* 25 Am.Jur.2d *Drugs and Controlled Substances* § 149, at 335 ("Where the defendant is not the sole occupant of an automobile, his presence in an automobile in which illicit drugs are found does not, without more, sustain his conviction of possession of such drugs."); Short, § 2(a), at 1323.

In *Mitchell v. State*, 268 Ga. 592, 492 S.E.2d 204 (1997), a vehicle was operated by a man named Hicks and owned by his girlfriend. Hicks picked up the defendant, Mitchell, and they were arrested in a routine traffic stop. An officer walked a police dog around the car, and the dog alerted to drugs. Officers searched the car and found plastic bags containing cocaine under the front passenger side floor mat. The court held the proximity of the drugs to the defendant was insufficient evidence of possession because (1) there was no presumption of possession because Mitchell did not own or control the car and (2) a finding of constructive possession cannot rest on mere proximity, especially when the contraband is hidden.

In *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988), the defendant was a passenger in a car stopped for a traffic violation. The court reviewed the analytical framework employed by other jurisdictions when contraband is found in a vehicle occupied by more than one person and suggested the facts to be considered are: (1) was the contraband in plain view, (2) was it with defendant's personal effects, (3) was it found on the same side of the car seat as the defendant or immediately next to him, (4) was the defendant the owner of the vehicle, and (5) was there suspicious activity by the defendant. *Id.* at 795; *see also* 25 Am.Jur.2d *Drugs and Controlled Substances* § 149, at 335.

Taking the State's evidence against this defendant in the light most favorable to the verdict, we may assume the defendant knew the fanny pack was under the driver's seat and that she knew it contained methamphetamine. For purposes of resolving the issue of control, we may even assume she knew it contained a "substantial" amount of methamphetamine as her former husband testified. The problem with the State's case is it did not show that the defendant exercised dominion and control over the drugs. A defendant's close physical proximity to contraband, as virtually all authorities agree, is insufficient in itself to constitute dominion and control.

Applying the considerations set out above, the evidence was undisputed that the drugs were not in plain view, they were not with the defendant's personal effects, they were not found on the same side of the car or immediately next to her, and the defendant was not the owner of the car. There was, however, suspicious activity by the defendant, as will be discussed later. *See also Hurtado v. State*, 881 S.W.2d 738 (Tex.Crim.App.1994) ("[F]urtive movements or gestures alone are insufficient evidence to prove guilt.").

Here, the fanny pack and its contents, according to the undisputed evidence, were the property of Scott Atkinson, the driver. There was no evidence the defendant had the right to exercise control over the fanny pack. In fact, the evidence was that, when she had obtained drugs from the fanny pack in the past, she had done so as a paying customer, not as one who had any ownership or proprietary rights in the

drugs. A search of the defendant at the arrest scene did not reveal any methamphetamine on her person.

While it seems anomalous to look at a defendant's "right" to control illegal drugs in order to establish possession, that concept basically distinguishes a defendant's raw physical ability to exercise control over contraband simply because of the defendant's proximity to it and the type of rights that can be considered constructive possession. A Florida case, *State v. Snyder*, 635 So.2d 1057 (Fla.Dist.Ct.App.1994), illustrates the point. In *Snyder* the defendant was a passenger in a car driven by his codefendant, John Parker. The two drove to a post office where, as the defendant knew, Parker was expecting the arrival of a shipment of methamphetamine. Parker picked up the shipment and offered some to the defendant, who said he would like to try some. Parker began to form two "lines" of methamphetamine onto a cassette case, and he placed the rest under his seat in the car. Police arrived before he completed the lines. Parker's affidavit stated the defendant had not acquired actual possession of the drug because he had no right or opportunity to exercise dominion and control over it. *Id.* at 1058. The state showed the defendant had prior knowledge of the delivery of the drugs and that he intended to try some of the methamphetamine had police not arrived. The trial court ruled the state had failed to show dominion and control. *Id.* at 1058. The court of appeals affirmed. It said:

> The state argues that Snyder's proximity to the contraband together with his prior knowledge of the delivery and intent to try some of the substance gives rise to the inference that Snyder had a proprietary interest in the methamphetamine. For these facts to give rise to constructive possession, one must infer from the proprietary interest that Snyder had dominion and control. This reasoning is untenable because neither inference can be deduced from the available facts and because the ultimate existence of constructive possession requires an impermissible pyramiding of inferences. The interpretation of the facts in the light most favorable to the state establishes no proprietary rights in Snyder, nor any immediate right to reduce the methamphetamine to his possession, because Parker had not yet relinquished control over the line he was organizing for their use.
>
> The undisputed facts show that police interrupted Parker before he had given Snyder a sample of the drug. The state's interpretation of the facts presumes that Parker had made an irrevocable gift to Snyder and deprives Snyder of the right to change his mind about accepting delivery.

*Id.* at 1058–59 (citations omitted). The court held the state had failed to show constructive possession because it had failed to show dominion and control.

■ The State introduced evidence of the "suspicious" activities of the defendant in moving around in the station wagon while the officer had Scott in the patrol car. The State thereby suggests (but does not articulate) an argument that the defendant constructively possessed the methamphetamine because she exercised dominion and control over it by attempting to hide it under the driver's seat. However, while officers testified the defendant was moving around in the vehicle, they did not see her exercising dominion over Scott's fanny pack. One officer testified "she was moving around a lot inside the vehicle. I'm not sure what she was doing though." When the defendant was questioned at trial about her movements inside the car, she said her purse was initially on the floorboard and it contained drug paraphernalia (not involved in this case). She testified she was "looking to see if I could stick that somewhere real quick." She testified she took her billfold out of the purse in case she was asked for identification "because I wanted to be able to produce my identification without having to open the purse." Any conclusion that the defendant

exercised control over the fanny pack by attempting to hide it would be based on pure speculation and would adopt an argument only implicitly raised by the State. We therefore reject it.

We conclude the State failed to prove the defendant had dominion and control over the fanny pack and thus failed to prove constructive possession of the methamphetamine. Therefore, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for dismissal.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**