**STATE of Iowa, Appellee,**

v.

**Rodney Dale McDOWELL, Appellant.**

**No. 99–0227.**

Supreme Court of Iowa.

Feb. 14, 2001.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Andrew B. Prosser, Assistant County Attorney, for appellee.

CARTER, Justice.

Defendant, Rodney Dale McDowell, appeals from his conviction and sentence for possession with intent to deliver a controlled substance while in immediate possession or control of a firearm in violation of Iowa Code sections 124.401(1)(c)(3), 124.401(1)(e) (1997). He urges that the evidence was insufficient to establish his immediate possession and control of a firearm. The court of appeals affirmed the judgment of the district court. After reviewing the record and considering the arguments presented, we vacate the judgment of the court of appeals. The judgment of the district court is reversed, and the case remanded for resentencing of defendant.

The evidence, viewed most favorably toward the State, reveals that prior to the initiation of these criminal charges defendant had on two occasions sold cocaine and cocaine base to a confidential informant working for the police. That informant testified that these controlled buys took place in the home of defendant's girlfriend, Bertha Mae Scott. He also testified that on seven other occasions within a five-month period preceding the controlled buys he had been in Scott's home when defendant was present and drugs were being sold.

Using information obtained from the informant, the police obtained a search warrant that was executed on Bertha Mae Scott's residence. During the search of that residence, police discovered and seized small plastic bags of crack cocaine base located in a closet and on the kitchen table. They also found and seized a police scanner, an electronic scale, and crack cocaine paraphernalia.

When police entered Scott's residence, defendant was in the northwest bedroom. The confidential informant testified that it was in this bedroom that the two controlled buys had been transacted. In that bedroom police found a letter addressed to defendant and Scott at the address where the warrant was being executed. In a closet in that bedroom they found two charts converting grams to ounces and ounces to pounds.[1] Next to these charts on a shelf was a woman's purse containing a .22 caliber revolver. That pistol formed the basis for the charge involving immediate possession or control of a firearm.

Defendant testified that his principal place of residence was Waterloo. He claimed that he had come to Burlington to mediate a child custody squabble between his daughter and son-in-law who lived in that city. During part of this time, both his daughter and son-in-law were confined in the Des Moines County jail. Following his release from jail, defendant's son-in-law took one of defendant's daughter's

---

1. This was not the closet in which the cocaine base was found. That closet was in a different room.

children and absconded from the area. Defendant testified that he remained around to help his daughter recover her child. He stayed in the apartment of his daughter, but they eventually had to give it up for financial reasons. He testified that he frequently visited the Scott residence and slept there on occasion. He denied having any knowledge of the revolver that was contained in Scott's purse on the closet shelf or that a firearm of any kind was in the home.

Much of defendant's testimony concerning his living arrangements was corroborated by Ms. Scott. She also testified that defendant had no knowledge of the existence of the .22 caliber revolver. She testified that he did not live in her home, although he would visit frequently. Occasionally he would sleep with her in the northwest bedroom and other times he slept on a couch in the living room. She testified that the .22 revolver was hers and had been given to her by her ex-husband. She stated that she had never advised defendant of the gun's existence.

Defendant was convicted of two counts of delivery of a controlled substance as an habitual offender based on the two controlled buys. He was also convicted of possession with intent to deliver a controlled substance while in immediate possession or control of a firearm, which is a matter at issue on this appeal. Other facts relevant to this appeal will be discussed in connection with the legal issues presented.

## I. *The Sufficiency–of–the–Evidence Issue.*

■ At trial defendant's counsel did not object to the sufficiency of the evidence to establish that he had immediate possession or control of the revolver found in the purse on the closet shelf. This omission is now the basis of a claim that defendant received ineffective assistance from his trial counsel. To establish such a claim requires the usual showing that counsel failed to perform an essential duty and that prejudice resulted therefrom. *See, e.g., State v. Hopkins,* 576 N.W.2d 374, 378 (Iowa 1998).

In the present case, both the breach-of-duty component and the prejudice component of defendant's ineffective-assistance claim depend entirely on the merit of the claim that his trial counsel failed to assert. If a motion to withdraw the issue of firearm possession or control from the jury would have been successful and thus reduced defendant's sentence, a failure to make that motion was indeed a breach of an essential duty and was prejudicial. Conversely, if the evidence was sufficient to submit the issue of defendant's immediate possession or control of a firearm to the jury, the failure to challenge that action was not ineffective assistance of counsel.

On the merits of defendant's claim that the evidence was insufficient to show that he was in immediate possession or control of a firearm, defendant and the State are in agreement on some matters. These are:

(1) Based on *State v. Eickelberg,* 574 N.W.2d 1, 5 (Iowa 1997), immediate possession of a firearm means actual possession on one's person.

(2) Also based on *Eickelberg,* immediate control of a firearm may be established by showing that the defendant was in such close proximity to the weapon as to claim immediate dominion over it. *Eickelberg,* 574 N.W.2d at 5. Defendant does not dispute that he was within such proximity to the revolver on the closet shelf.

(3) To show either immediate possession or immediate control, it must be established that defendant had knowledge of the presence of the firearm.[2] From the foregoing, it appears that this is an immediate-control case rather than an immediate-possession case.

---

**2.** The *Eickelberg* criteria for immediate control of a firearm, stated at 574 N.W.2d at 3–4, relied on the criteria for controlled substance constructive possession established in *State v. Rudd,* 454 N.W.2d 570, 571 (Iowa 1990). Those criteria included knowledge of the exis-

■ Defendant urges that, notwithstanding the proximity of the firearm to his person, the State failed to establish that he knew of the weapon's existence. The State contends that knowledge of the pistol's presence may be inferred from the surrounding facts. On this issue, we find the pronouncements made in *State v. Reeves*, 209 N.W.2d 18 (Iowa 1973), to be helpful. In that case, we considered what must be shown to establish constructive possession of a controlled substance. In so doing, we discussed the inferences that may be employed and the inferences that are not available. We stated in *Reeves* that "[p]roof of opportunity of access to a place where narcotics are found will not, without more, support a finding of unlawful possession." *Reeves*, 209 N.W.2d at 22. Later in the opinion, we stated:

> If the premises on which such substances are found are in the exclusive possession of the accused, knowledge of their presence on such premises coupled with his ability to maintain control over such substances may be inferred. Although no further proof of knowledge by the State is required in cases of exclusive possession by the accused the inference of knowledge is rebuttable and not conclusive. *But where the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the substances on the premises.*

*Id.* at 23 (emphasis added).

The circumstantial evidence on which the State relies to establish defendant's

knowledge of the firearm's presence all pertains to his frequent presence in Scott's home and his use of the northwest bedroom to sleep and conduct drug transactions. There is no evidence that defendant had ever accessed the purse belonging to Scott in which the firearm was contained. To the extent that this evidence shows some dominion and control by defendant over various portions of Scott's residence, that dominion or control was certainly not exclusive. There is no evidence of the type credited in the *Reeves* case to establish his knowledge of or control over the firearm in Scott's purse. Consequently, if a motion to withdraw the issue of defendant's immediate possession or control of the firearm from the jury had been made, it should have been granted. This omission does constitute ineffective assistance of trial counsel and requires us to set aside the jury's finding on the issue involving defendant's possession or control of a firearm. Defendant should be resentenced on count III of the trial information as if such finding had not been made.

## II. *Jury Instructions on Immediate Possession or Control of a Firearm.*

■ Defendant also urges that the district court erred in failing to include in the instructions defining immediate possession or control of a firearm the element of knowledge of the firearm's existence. The court of appeals agreed that the jury should have been so instructed. It concluded, however, that the omission was harmless. The district court had instructed the jury that the State was required to show defendant's "direct physical control of the firearm on or about his person." The court of appeals concluded that knowledge of the gun's presence inheres in a finding of such control. This issue will not be retried in the present case. However, for the benefit of the bench and bar, we

tence and location of the substance alleged to    have been controlled by the accused.

admonish trial courts to include in instructions defining the immediate possession or control of a firearm the element of knowledge of the firearm's existence and location.

We have considered all issues presented and conclude that the decision of the court of appeals should be vacated. The judgment of the district court is reversed and the case remanded to that court for resentencing on count III of the trial information in the absence of a finding that defendant had immediate possession or control of a firearm.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except TERNUS, J., who concurs specially.

TERNUS, Justice (concurring specially).

I concur in the court's opinion for two reasons. First, our opinion signals the court's return to a proper application of the principles of constructive possession as set forth in *State v. Reeves,* 209 N.W.2d 18 (Iowa 1993). Secondly, our opinion implicitly rejects the erroneous application of those principles made in *State v. Simpson,* 528 N.W.2d 627 (Iowa 1995).