# IN THE COURT OF APPEALS OF IOWA

No. 16-0207
Filed February 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT DEAN AHART,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

A defendant appeals the firearm enhancement applied to his multiple drug-related convictions resulting in an indeterminate fifty-year prison sentence. **JUDGMENT REVERSED IN PART; REMANDED FOR RESENTENCING.**

David C. Shinkle of Shinkle & Lynch, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

The fighting issue in this appeal is whether the firearm enhancement under Iowa Code section 124.401(1)(e) (2015) was properly applied to double Robert Ahart's drug-delivery sentence—from twenty-five to fifty years. Ahart contends the district court erred in submitting the issue to the jury, in not granting a new trial based on the jury's determination he was in "immediate possession or control" of a firearm while committing his drug offenses, and in not granting a mistrial based on the prosecutor's rebuttal closing argument misinterpreting the instructions on conspiracy and immediate control of the firearm.

Because the firearm was not in plain view and Ahart did not have exclusive control over the residence from which he was dealing drugs, the State was required to offer evidence establishing his actual knowledge of the firearm's existence and location or circumstances from which a jury could reasonably infer his knowledge. Finding the State did not offer substantial evidence to show Ahart knew about the firearm's presence, we reverse the judgment in part and remand for resentencing without the penalty enhancement under section 124.401(1)(e).

## I. Facts and Prior Proceedings

At trial, the State offered evidence that Ahart and his girlfriend, Mara Lubavs-Martin, operated a large-scale drug-dealing operation out of their Des Moines residence. Law enforcement surveilled the house on at least ten occasions and saw people coming and going on a regular basis. Officers from the Mid-Iowa Narcotics Enforcement and the Drug Enforcement Administration task forces executed a search warrant at that house in early April 2015.

After entering, officers secured Ahart and Lubavs-Martin in the kitchen on the main floor while fellow officers searched three other levels of the house. Searchers found $190 in one pocket of Ahart's pants and $1354 in another pocket. In Ahart's wallet, they found drug notes listing customers who owed money and those who had paid. Searchers also found a baggie of crystal methamphetamine, $600 in cash, and drug notes in Lubavs-Martin's purse.

Upstairs from the kitchen were two bedrooms. In the master bedroom, the searchers found drug ledgers under a chest of drawers. In what appeared to be a spare bedroom, officers found a small safe on a closet shelf. Inside the locked safe, searchers found nearly $8000 in cash and thirteen Ziploc® baggies containing methamphetamine, as well as a checkbook belonging to Ahart. Also in the safe, searchers found prescription drugs, including thirty-eight clonazepam pills, twenty-two hydrocodone pills, and 141 hydromorphone pills.

Downstairs, about ten to fifteen yards from the kitchen, the officers searched a small living-room area. Amidst the clutter, they found a glass pipe used for smoking methamphetamine and a measuring cup containing methamphetamine residue. On the floor near that pipe, officers found a white cloth knee brace; wrapped inside the knee brace was a black drawstring bag containing a .25 caliber pistol. The firearm was unloaded, its firing pin was broken, and the serial number was scratched off.[1] Searchers also located "paperwork and a checkbook"—marked as State's Exhibit No. 11—on one of the

---

[1] The DCI criminalist was able to test fire the pistol only after replacing the broken firing pin with a donor pin from its collection. The criminalist also was able to recover the obliterated serial number but did not determine the gun's ownership. The lab was not asked to test the firearm for fingerprints.

tables "down in the same vicinity of the firearm." The paperwork was a March 2015 credit-card statement addressed to Ahart. Exhibit No. 11 also contained a letter sent from the clerk of court to Katrina Saylor, a recent visitor to Ahart's residence, at a different Des Moines address.[2]

Down another set of stairs was the basement. A drug dog used in the search alerted on a panel in the basement wall. Behind the panel, the officers found a stash of twenty-eight baggies of methamphetamine, each weighing about one ounce. Law enforcement estimated the methamphetamine found in the house was worth about $40,000.

Based on the spoils of the search, the State charged Ahart in a twelve-count trial information. Ahart stood trial in November 2015. Five law enforcement officers and a Division of Criminal Investigation analyst testified for the State; the defense did not present evidence. In closing statements, the prosecutor told the jury:

> You have probably figured out what the fighting issue is in this case. It is with regard to the firearm. The defendant alleges that he did not know about or possess the firearm that was found in this living room. He submits that because of the way it's packaged, that manner of packaging is such that he could not have been in immediate possession or control of it. The officers can't say how long it was there. You can look at the circumstances that surround this crime to make a determination of whether or not he knew about it, whether or not he was in the immediate possession or control.

The prosecutor further argued because Ahart "turned his entire house into a drug dealing operation" that it would not "stand to reason" that he knew all about the other items found in the house but not the gun.

---

[2] The surveillance officers were aware that two other people, Saylor and Russell Clover, had been in the house within an hour of the search.

In the defense closing, the attorney reminded the jury of the State's burden of proof: "Is it reasonable to believe that Mara Lubavs-Martin put that gun there, knew it was there? Yes. It's reasonable to believe. What about Mr. Ahart? If it's reasonable to believe, that's not proof by the State beyond a reasonable doubt that he knew it."

The State offered the following response in its rebuttal argument:

> Robert Ahart is involved in a conspiracy with Mara Lubavs. . . . So if Mara Lubavs—if that's her gun and she put it there and she possessed it and Robert Ahart knew nothing about it, because they were in conspiracy together, he is as responsible for that gun as she is. . . . You may use common sense and decide that it is plain that Robert Ahart knew about that gun and was in the immediate control of it or that Mara Lubavs did. And if she did, Robert Ahart is also guilty, as her coconspirator, of being in the possession and control of that firearm.

Immediately after the jury went to deliberate, defense counsel moved for a mistrial based on the prosecutor's assertion about the conspiracy instruction and his immediate control of the firearm. Defense counsel argued "the law requires immediate possession of a firearm determination individually regarding persons who may be charged with that and that the acts of a coconspirator regarding immediate possession of a firearm cannot be attributable to some other person." Counsel contended the prosecutor's argument "tainted what this jury is going to discuss" and there was "no way to correct it."

The prosecutor argued the motion was untimely and the statement correctly reflected the law on conspiracy. The court agreed the request was untimely but reserved ruling on the mistrial until the jury reached its verdicts.

Less than an hour later, the jury returned verdicts convicting Ahart of all twelve offenses: (I) conspiracy to deliver more than five grams of

methamphetamine (class "B" felony), (II) possession with intent to deliver more than five grams of methamphetamine (class "B" felony), (III) failure to possess a tax stamp (class "D" felony), (IV) conspiracy to deliver hydrocodone (class "C" felony), (V) possession with intent to deliver hydrocodone (class "C" felony), (VI) failure to possess a tax stamp (class "D" felony), (VII) possession of hydromorphone (class "C" felony), (VIII) possession with intent to deliver hydromorphone (class "C" felony), (IX) failure to possess a tax stamp (class "D" felony), (X) conspiracy to deliver clonazepam (aggravated misdemeanor), (XI) possession with intent to deliver clonazepam (aggravated misdemeanor), and (XII) failure to possess a tax stamp (class "D" felony). For counts I, II, IV, V, VII, VIII, X, and XI, the jury answered affirmatively special interrogatories asking if Ahart was in "immediate possession or control of a firearm during the commission" of the offense.

After the return of the verdicts, the district court denied the motion for mistrial, "based upon the waiver of the objection not being raised during the course of the rebuttal closing." In rejecting Ahart's motion for new trial, the district court stated it did not believe "the weapons enhancement can be proved by a conspiracy" but maintained that defense counsel had a duty to object "during the course of the closing argument." The court also concluded a "single incident of alleged misconduct" did not require the grant of a new trial.

At sentencing, the district court merged the convictions and sentences for count I with count II, count IV with count V, count VII with count VIII, and count X with count XI. The firearm enhancement under section 124.401(1)(e) doubled the sentences for counts II, V, VIII, and XI to fifty years, twenty years, twenty

years, and four years, respectively. The district court imposed a sentence not to exceed fifty years by running the terms concurrently to each other and concurrently to a pending federal sentence faced by Ahart.

Ahart now appeals.

## II. Scope and Standard of Review

On the only appellate claim we reach—sufficiency of the evidence supporting the firearm enhancement—our review is for the correction of legal error. *See State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016). We will uphold the jury's finding by special interrogatory if it is supported by substantial evidence. *See State v. Draper*, 457 N.W.2d 606, 609 (Iowa 1990) (finding substantial evidence to support jury's habitual-offender finding). That measure is whether the evidence would convince a rational trier of fact that the State proved its allegation beyond a reasonable doubt. *See State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). "The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002). To determine if the State has met its burden, we consider all record evidence, both favorable and unfavorable to the verdicts, and view the evidence in the light most favorable to the State. *State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011).

## III. Analysis

Ahart argues the district court was wrong in allowing the jury to consider whether he had immediate control of the pistol seized during the search. At issue is the drug-offense firearm enhancement, which provides:

> A person in the immediate possession or control of a firearm while participating in a violation of this subsection[3] shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended.

Iowa Code § 124.401(1)(e).

The district court instructed the jury that "immediate possession" means "actual possession on one's person" and "immediate control" means "the defendant was in such close proximity to the weapon as to claim dominion and control over it." The instruction required the State to prove "the defendant had knowledge of the existence and location of the firearm." *See State v. McDowell*, 622 N.W.2d 305, 309 (Iowa 2001) (admonishing "trial courts to include in instructions defining the immediate possession or control of a firearm the element of knowledge of the firearm's existence and location"). The instruction also advised that immediate control must have occurred "while the defendant was participating in the crime." *See State v. Eickelberg*, 574 N.W.2d 1, 5–6 (Iowa 1997) (distinguishing between time of participation in the offense and time of discovery of controlled substances).

Like *McDowell*, "it appears that this is an immediate-control case rather than an immediate-possession case" because the firearm was not found on Ahart's person. *See* 622 N.W.2d at 307. Control is akin to constructive possession. *Eickelberg*, 574 N.W.2d at 3. To prove constructive possession, the State must show the defendant had knowledge of the contraband as well as

---

[3] This subsubsection criminalizes "manufactur[ing], deliver[y], or possess[ion] with the intent to manufacture or deliver, a controlled substance, . . . or . . . act[ing] with, enter[ing] into a common scheme or design with, or conspir[ing] with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance." Iowa Code § 124.401(1).

authority to maintain control of it. *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013). Here, the question is whether the State proved Ahart had been "in such close proximity to the weapon as to claim immediate dominion over it" and he had "knowledge of the presence of the firearm." *See Reed*, 875 N.W.2d at 708 (citation omitted). "Such knowledge and control may be inferred if the firearm is found in a location under the defendant's exclusive control." *Id.*

But Ahart did not have exclusive dominion and control over the residence where the search occurred. He lived there with Lubavs-Martin. Moreover, law enforcement saw Clover and Saylor leaving the house shortly before the search, and during prior surveillance had seen other visitors, presumably drug customers, frequently arriving and departing from the residence. Accordingly, Ahart's knowledge of the firearm's existence and location may not inferred. Rather, the State has the burden to establish Ahart's actual knowledge of the firearm or "incriminating statements or [other] circumstances from which a jury might lawfully infer knowledge." *See id.* (quoting *State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973)); *see also Webb*, 648 N.W.2d at 79 (listing constructive possession factors as incriminating statements, incriminating actions of the defendant upon police discovery of the contraband, defendant's fingerprints on the contraband, and any other circumstances linking the defendant to the contraband).

After reviewing the record, we find the evidence insufficient to prove Ahart's knowledge of the existence and location of the firearm.[4] The State did

---

[4] Because we reverse on the sufficiency question, we express no opinion on the accuracy of the prosecutor's argument concerning proof of the firearm enhancement

not offer evidence of any incriminating statements or actions linking Ahart to the pistol. The testimony also revealed the State did not pursue any latent fingerprint testing of the gun. The case agent who obtained the search warrant testified he did not request fingerprinting, reasoning as follows:

> The firearm in particular was found, in my mind, in the dominion and control of Mr. Ahart. The firearm was found in a living area where he's obviously been living, near paperwork with his name on it. In my mind, we have tools such as latent prints to prove that he did—that he did touch it, but in this case the mere fact that dominion and control was under Mr. Ahart was deemed possession by me.

Without incriminating statements, actions, or fingerprints, we must decide if the State offered evidence of "other circumstances" from which the jury could reasonably infer Ahart's knowledge of the gun's existence and location.

In resisting Ahart's motion for judgment of acquittal, the State summarized its evidence:

> The officers testified with regard to the particular location of this gun. It's found near paperwork bearing Mr. Ahart's name. It's also found near a measuring cup that contains residue of methamphetamine. I think they estimated the distance as being thirty feet from a large amount of methamphetamine found in the panel and also about thirty-five feet from where the defendant was found standing.

The district court denied Ahart's motion, noting the handgun's proximity to "the measuring cup that had remnants of methamphetamine and other paraphernalia that was associated with methamphetamine."

---

under the principles of conspiracy. But even assuming the argument was proper, the State's evidence also was insufficient to prove Lubavs-Martin's knowledge of the existence and location of the firearm, and the State does not advance a vicarious liability argument for upholding the sufficiency of the firearm enhancement.

The evidence cited for submitting the firearm enhancement to the jury supports an inference that Ahart was in the immediate vicinity of the gun when he passed through the living area to retrieve methamphetamine from the stash on the lower level of the house. In *Eickelberg*, our supreme court adopted the dictionary definition of "immediate" as "being near at hand: not far apart or distant." 574 N.W.2d at 4 (citation omitted). But proof of proximity alone does not satisfy the knowledge requirement. If Ahart did not know the gun was inside the opaque drawstring bag, which was wrapped inside a white cloth knee brace, his proximity would not amount to immediate control. *See State v. Cashen*, 666 N.W.2d 566, 572 (Iowa 2003) ("Simply because a person can reach out and grasp something does not mean he or she has control or dominion over the object."); *see also State v. Atkinson*, 620 N.W.2d 1, 4–5 (Iowa 2000) (holding defendant's physical proximity to drugs was insufficient to constitute constructive possession).

The State presented no evidence to show Ahart knew what was wrapped inside the knee brace. The State did not offer the knee brace as an exhibit. Photographic exhibits show the white cloth among a clutter of items on the floor behind a couch and under a table. State's Exhibit 39 appears to depict the mess before the officers started their inventory of items seized. The photograph shows the white cloth obscured behind a small trash bin and underneath a green bungee cord and black glasses case. Nothing from the outward appearance of the knee brace would indicate that it held a small pistol. The brace is lying next to a phonebook on top of which is a methamphetamine pipe. *See State v. Nickens*, 644 N.W.2d 38, 41 (Iowa Ct. App. 2002) (holding State failed to

establish constructive possession when cocaine and firearm were not in plain view and to establish Nickens's knowledge the State relied on apartment's size and presence of drug paraphernalia).

An officer testified Ahart's checkbook and credit card statement were found on a table "in the same vicinity" as the firearm. Given the chaotic housekeeping evident in the photographic exhibits, the proximity of that paperwork to the pile of random items on the floor, including the knee brace, provides no reasonable inference that Ahart had knowledge of the gun's existence or location.

On appeal, the State compares this case to *Eickelberg*, where our supreme court concluded the defendants were in immediate control of a firearm when they were growing marijuana in the basement and stored a shotgun on the floor of their bedroom closet upstairs.[5] *See* 574 N.W.2d at 5. The *Eickelberg* court rejected the defendants' suggestion that the State must prove a "direct" connection between the drug offense and the immediate possession or control of the firearm*. See id.* at 6*.* The court observed that the defendants had "transformed their entire home into a facility for the manufacture of marijuana" and, therefore, the district court had properly applied the penalty-enhancement provision. *Id.* The State argues that, similarly, Ahart turned his entire house into a facility for drug dealing, placing him in immediate control of the firearm when he accessed the methamphetamine in the basement.

---

[5] The facts in *Eikelberg* also show the police "found an unloaded shotgun stored in a gun case on a gun rack in the same room as the marijuana plants." 574 N.W.2d at 2.

The analysis in *Eickelberg* did not address the defendants' knowledge of the existence or location of the shotguns.[6] The court's reference to transforming the entire home into a marijuana manufacturing facility focused on the "while participating" language from section 124.401(1)(e) and not the proof expected from the State concerning the defendants' knowledge that the guns were present in the house. *Id.* at 5–6. Accordingly, *Eickelberg* does not dictate our decision regarding Ahart's knowledge of the firearm's existence and location.

We also find *Eickelberg* can be distinguished because it does not appear from the factual recitation that either the shotgun on the closet floor or the one on the basement gun rack were obscured from view. *See id.* at 2. Because the pistol found in Ahart's residence was not in plain sight, we find this case more similar to *Reed* and *McDowell* than *Eickelberg.* The State argues *Reed* and *McDowell* differ in a critical way, namely that the firearms were found in or near a woman's purse. *See Reed*, 875 N.W.2d at 697, 709 (recounting revolver was found inside a cabinet, behind an Xbox, and "next to a woman's purse and a pink lotion bottle"); *McDowell*, 622 N.W.2d at 308 (finding no evidence defendant knew firearm was in girlfriend's purse). While it is true that nothing about the black drawstring bag or the cloth knee brace wrapped around the pistol in Ahart's residence suggested "some type of gender-specific sphere of protection which prevents men from opening or having access to this socially-constructed sacred

---

[6] The *Eickelberg* court also relied on the constructive possession definitions from *State v. Rudd*, 454 N.W.2d 570, 571 (Iowa 1990), which has since been overruled in *Webb*, 648 N.W.2d at 79.

vessel of femininity,"[7] the pistol was nevertheless concealed from view. Under these facts, the State was required to show Ahart actually knew the gun was disguised by the knee brace and located amid the clutter. The State offered no evidence of the type credited in *Reeves* or *Webb* to establish Ahart's knowledge of the firearm's existence or location. *See McDowell*, 622 N.W.2d at 308. Consequently, the district court should have granted the defense motion asking to remove the firearm enhancement from the jury's consideration.

Because Ahart does not challenge the underlying judgments for his drug offenses, those judgments remain in place. We reverse the imposition of the penalty enhancement under section 124.401(1)(e) and remand for resentencing recognizing the absence of a finding that defendant had immediate possession or control of a firearm.

**JUDGMENT REVERSED IN PART; REMANDED FOR RESENTENCING.**

---

[7] *See State v. McDowell*, No. 99-0227, 2000 WL 852731, at *2 (Iowa Ct. App. June 28, 2000), *vacated*, 622 N.W.2d 305 (Iowa 2001).