# IN THE COURT OF APPEALS OF IOWA

No. 21-1406
Filed December 7, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**FONG PHANHNAO,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

Fong Phanhnao appeals his convictions and sentence. **AFFIRMED.**

Jane M. White of Gribble Boles Stewart & Witosky, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Tabor, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**BOWER, Chief Judge.**

Fong Phanhnao appeals his convictions for drug and firearm offenses. We find sufficient evidence supports the convictions and the district court did not abuse its discretion in refusing to grant a mistrial, the sentence it imposed, or refusing to play an implicit-bias video for the jury. We affirm.

**I. Background Facts & Proceedings.**

In July 2021, a jury found Phanhnao guilty of (1) possession of more than five grams of methamphetamine with the intent to deliver and while in possession of a firearm and (2) being a felon in possession of a firearm. Phanhnao stipulated his status as a felon.[1] After the jury's verdict, Phanhnao admitted being a second-time drug offender—a status increasing the maximum sentence that could be imposed.

During trial, the following information was presented to the jury. On December 10, 2020, city, county, and state law enforcement personnel executed search warrants on multiple locations in and around Black Hawk County associated with persons under surveillance for drug dealing. Four people lived at one of the addresses searched: the owner and his girlfriend lived upstairs, Phanhnao and Suan Dunfee lived in a small basement residence.

A sign taped on the front door of the house said "If your [sic] looking for Al or Sue use 'back door.'"[2] Phanhnao's nickname is "Al." Both Phanhnao and Dunfee were in the basement residence when law enforcement entered.

---

[1] In 2005, Phanhnao pleaded guilty to possession with intent to deliver methamphetamine and was sentenced to a fifty-year prison term. He was released on parole in 2012 and was still on parole at the time of the current offenses.
[2] The stairs down to the basement are located next to the back door.

One officer described the entire basement as "very full of stuff. There's basically a walk path around this basement . . . and there's just stuff stacked up everywhere." A cluttered shared laundry area was right next to the door to Phanhnao and Dunfee's living space. A curtain cordoned off part of the space into a bedroom; the foot of the bed was only a couple feet from the couch. Dunfee was sitting in the living space while law enforcement searched the residence, and Phanhnao spoke with law enforcement outside the house.

During the search, a knotted bag with approximately twenty-four grams of methamphetamine was found in a jacket pocket hanging in the basement living room.[3] A smaller plastic bag of methamphetamine—with no knotted closure—was found in a wallet belonging to Dunfee. Methamphetamine and marijuana paraphernalia was found throughout the basement. Phanhnao's wallet with his driver's license and $780 cash was found in the basement living room.[4] Dunfee's purse, located in the living room, contained $980 cash. Additional bundled and loose cash totaling $24,840 was found in a purse hanging in the bedroom. The cash in Phanhnao's wallet and most of the cash in the bedroom purse was bound in the same way: neatly stacked, folded over, and secured with clear elastic bands. Additional elastic bands were found in a container on their bed. A loaded gun was discovered at the foot of the bed between a mattress topper and the mattress.[5] A gun case with two additional magazines of ammunition was also in the bedroom.

---

[3] An officer testified user amounts of methamphetamine are commonly one gram or three and a half grams.

[4] Phanhnao's identification listed a different address. The license had expired in 2006.

[5] Two firearm replicas were also found on the bed.

Additional evidence was found in the hallway to Phanhnao and Dunfee's living space. Several one-ounce bags of methamphetamine—knotted in the same way as the bag in the jacket—were found in an ammunition container immediately outside their door.[6] A holster for a different gun and a backpack containing two more magazines loaded with the same caliber ammunition as the gun in the apartment and two digital scales were found in the laundry area.

Phanhnao told one of the officers most of the money was his, but he denied knowledge of all the drugs and paraphernalia found. He stated he had been saving money over time from working odd jobs—he made about $100 per week working in the garden and helping a lady with her dogs. Phanhnao paid $300 per month in rent for the apartment.

Dunfee has limited mobility following brain surgery. She has good and bad days; her hands shake, she could not lift her hand all the way when being sworn in, and her ability to drive herself or shop varies day-to-day. Dunfee testified the jacket the methamphetamine was found in was hers, but she stated she hadn't worn it for some time. She told the jury she had $43,000 in cash in the apartment, Phanhnao did not know about the money, and she never counted it around him.[7] She denied knowing what methamphetamine looks like and did not know about the presence of methamphetamine in the jacket or wallet or about the methamphetamine paraphernalia in the residence.

---

[6] When the door into the living space was open, the ammunition container would not be visible behind the door.

[7] Dunfee testified $6500 of the cash was from her divorce and she had saved her monthly social-security and spousal-support payments.

The jury found Phanhnao guilty of possession with intent to deliver more than five grams of methamphetamine as a second offender with a firearm "in such close proximity . . . as to enable [Phanhnao] to claim immediate dominion over the firearm" and guilty of possession of a firearm as a felon.  The court sentenced Phanhnao to 100 years in prison and imposed a fine for the possession-with-intent-to-deliver conviction and five years plus a suspended fine for the felon-in-possession-of-a-firearm conviction.  The two sentences were ordered to run concurrently but consecutive to the sentence imposed for his 2005 conviction following parole revocation.

**II. Analysis.**

*A. Sufficiency of the evidence.*  Phanhnao challenges the sufficiency of the evidence supporting his constructive possession of the methamphetamine, cash, or firearm found during the search.[8]  The jury considered Phanhnao's guilt either as the principal perpetrator or as aiding and abetting constructive possession of the drugs while in possession of a firearm.

> We review sufficiency-of-the-evidence claims for correction of errors at law.  We will uphold the verdict if it is supported by substantial evidence.  Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.

*State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019) (internal citations and quotation marks omitted).

---

[8] Phanhnao made a "weight-of-the-evidence" argument in a motion for new trial below and attempts to use that standard in his sufficiency-of-the-evidence argument.  However, he makes no argument the district court abused its discretion in denying his motions for mistrial and new trial based on the weight of the evidence.  With no argument to evaluate, we deem his weight-of-the-evidence argument waived.  *See* Iowa R. App. P. 6.903(1)(g)(3).

"'The existence of constructive possession turns on the peculiar facts of each case.' Constructive possession may be inferred when the drugs or firearms are found on property in the defendant's exclusive possession. . . . When the premises are jointly occupied, additional proof is needed." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (internal citations omitted).

> We have identified several nonexclusive factors to consider in determining whether the defendant possessed contraband discovered in jointly occupied structures:
> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.
> The last factor is a "catchall" that captures other relevant circumstantial or direct evidence. "The evidence of guilt must generate more than mere suspicion, speculation, or conjecture."

*Id.* at 706 (internal citations omitted).

> To sustain a conviction on the theory of aiding and abetting, the record must contain substantial evidence the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission. The State must prove the accused knew of the crime at the time of or before its commission. However, such proof need not be established by direct proof, it may be either direct or circumstantial.
> Neither knowledge of the crime nor proximity to the crime scene are enough to prove aiding and abetting. However, they are factors, which with circumstantial evidence such as "presence, companionship, and conduct before and after the offense is committed," may be enough to infer a defendant's participation in the crime.

*State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000) (internal citations omitted).

First, we address Phanhnao's possession of methamphetamine. Dealer quantities of methamphetamine and multiple digital scales were found in and near

Phanhnao's rooms—twenty-four grams of the drug were found in a single knotted plastic bag in a coat pocket inside Phanhnao and Dunfee's residence, and another seven ounces were found immediately outside their door. Dunfee had a smaller, user amount in an unknotted bag in her wallet. The jury heard testimony about Dunfee's limited mobility and saw Dunfee struggle to lift her hand when being sworn in as a witness, permitting a reasonable inference about Dunfee's inability to divide the larger quantity into individual amounts on her own. Drug paraphernalia was found throughout the living space. The jury heard testimony that narcotics sales is a cash business, and a large sum of cash, much of which was precisely counted, folded, and bound, was found in Phanhnao's wallet and in a purse in the shared bedroom. Phanhnao and Dunfee both claimed ownership of the money, but Dunfee suggested a significantly different sum than was seized during the search. Phanhnao had $780 cash in his wallet and was able to pay bills, but he had only meager earnings. The jury could reasonably question the credibility of his claim to also have saved in excess of $24,000 in cash. Viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find Phanhnao either constructively possessed the methamphetamine or aided and abetted Dunfee's possession.

The question of Phanhnao's possession of the firearm is relevant to a sentence enhancement for the drug charge as well as the separate offense of being felon in possession of a firearm. Under Iowa Code section 124.401(1)(e) (2020), an offender's sentence is doubled if they are "in the immediate possession or control of a firearm while participating" in the drug offense. *See State v. Franklin*, 564 N.W.2d 440, 444 (Iowa Ct. App. 1997) (clarifying the possession or control

must take place at the time of the crime, not the arrest). Under section 724.26(1), "A person who is convicted of a felony in a state or federal court, . . . and who knowingly has under the person's dominion and control or possession . . . a firearm or offensive weapon is guilty of a class "D" felony."

"[I]mmediate possession of a firearm means actual possession on one's person." *State v. McDowell*, 622 N.W.2d 305, 307 (Iowa 2001) (citation omitted). "[I]mmediate control of a firearm may be established by showing that the defendant was in such close proximity to the weapon as to claim immediate dominion over it." *Id.* (citation omitted).

> [W]here the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the [firearm] on the premises and the ability to maintain control over [the firearm] by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the [firearm] on the premises.

*See id.* (emphasis omitted) (citation omitted).

Phanhnao argues no evidence specifically links him or Dunfee to the firearm and anyone in the house would have access to its location. The gun here was found out of sight underneath the mattress pad but on top of the mattress shared by Phanhnao and Dunfee. Given the layout of the apartment, the gun would be easy to access from the living room at short notice. Also found in the bedroom was a large case containing foam cutouts to hold the gun in place and additional magazines filled with ammunition. More magazines of ammunition were found in a bag in the laundry hallway. Given that the firearm, several extra magazines of ammunition, and the gun case holding accessories for the firearm were found

spread out in and immediately outside the living space, and considering Dunfee's mobility issues and shaking hands, the evidence is sufficient for the jury to infer Phanhnao had knowledge of the firearm's presence and that he was in such close proximity to it that he had immediate control.

Considering all the circumstances, we find the evidence sufficient to support the jury's verdicts on both the drug and firearm charges.

*B. Motion for mistrial.* "We review a trial court's denial of a motion for mistrial for an abuse of discretion." *State v. Frei*, 831 N.W.2d 70, 73–74 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). "Generally, a district court's decision not to grant a mistrial but to offer a cautionary instruction instead is entitled to broad deference." *State v. Plain*, 898 N.W.2d 801, 815 (Iowa 2017). "Cautionary instructions are sufficient to mitigate the prejudicial impact of inadmissible evidence 'in all but the most extreme cases.'" *Id.* (citation omitted).

Phanhnao asserts the district court should have granted a mistrial when testimony violating a motion in limine concerning Phanhnao's status as a felon was presented. Before trial, the parties agreed to stipulate to the felony, and the court stated it assumed the witnesses were told not to say anything more than he was a felon, but there was no formal limine motion or ruling. The stipulation said, "On the date of occurrence, December 10, 2020, the defendant was a felon." Both parties told their witnesses "to not say anything more than [Phanhnao] was a felon." The State read the stipulation to the jury at the beginning of trial.

During trial, Investigator Joseph Zubak testified about the investigation that led to the search of Phanhnao's apartment and the discovery of the money and

contraband within. Questioning turned to how Zubak knew Phanhnao resided at the house getting searched.

> Q. And is that where Fong Phanhnao resided? A. Correct.
> Q. Were you able to verify that through your research? A. Yes.
> Q. And just a yes or no answer: Did Fong Phanhnao actually register that address with the state of Iowa? A. He did.

During cross-examination, the defense returned to the topic:

> Q. Okay. You said that you did verify that Mr. Phanhnao lives at 217 Linden. Was that based on what someone told you? A. It was based on—
> Q. I'm just asking, was it based on what someone told you? Just yes or no? A. It was based on what somebody told me.
> Q. Sometimes when you do search warrants, you do independently verify that somebody is living at a place because they get mail there or the utilities are in their name; is that correct? A. Well, that's true. And I think—I also think that—going back to your last question, it's not a yes or no answer. I was told by somebody that he lived there, that somebody being his parole officer. But that is also documented.

At that point, Phanhnao objected and moved for a mistrial. In support of the motion, his counsel stated, "This jury does not know that my client is on parole. They're not supposed to know he's even in jail. We discussed stipulating to the felon status to prevent all this information, and I can't go backwards now and unsay that for Investigator Zubak." The court denied the motion for mistrial but gave the jury the following cautionary instruction: "Evidence has been received concerning other wrongful acts alleged to have been committed by the defendant. The defendant is not on trial for those acts."

After the jury's verdict, Phanhnao filed a motion for new trial, asserting the court should have granted his motion for mistrial after his parole status was revealed to the jury. The court denied the motion for new trial, reasoning,

I think it's also significant that the second charge is possession of a firearm as a felon. The jury heard that he was a felon, and so I don't think that hearing that he had a parole officer is shocking. They have no idea what the felony was. They have no idea what he was on parole for. They have no idea that there's not a direct connection between those two, meaning that if you're a felon you automatically have a parole officer.

So there was nothing to suggest that there was any improper use of that information. And for the same reasons that I denied the motion for mistrial, I will deny the motion for new trial based on that same information.

To evaluate whether the court's cautionary instruction adequately mitigates any prejudicial impact of the testimony, we consider (1) "whether the 'defendant [can] combat the evidence without compounding the prejudice'"; (2) "how extensive the evidence is and the promptness with which it was addressed"; and (3) the prejudice—"the stronger the State's evidence of . . . guilt is, the less prejudicial the effect of the challenged testimony." *Plain*, 898 N.W.2d at 815 (alteration in original) (citation omitted). "The party claiming prejudice bears the burden of establishing it." *Frei*, 831 N.W.2d at 80 (citation omitted).

In view of the court's broad discretion in ruling on a motion for mistrial, the given cautionary instruction, and considering that the jury already knew Phanhnao was a felon from the stipulation and the mention of his parole status was not extensive, any prejudice to Phanhnao was minimal. We conclude the court did not abuse its discretion in denying the motion for mistrial.

*C. Abuse of discretion in sentencing.* "Our review of a sentence imposed in a criminal case is for correction of errors at law." *State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022) (citation omitted).

"A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of

discretion or the consideration of inappropriate matters.'" . . . "An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable."

*Id.* (internal citations omitted).

Phanhnao asserts the district court abused its discretion in imposing a 100-year sentence with a one-third mandatory minimum. The statutory sentence for possession with intent to deliver more than five grams of methamphetamine is twenty-five years. Iowa Code §§ 124.401(1)(b), 902.9(1)(b). Phanhnao's control of a firearm during the offense doubled the term of imprisonment under section 124.401(1)(e). Section 124.411 then gives the sentencing court discretion to impose up to three times the sentence for a "second or subsequent offense"—here giving the court a sentencing range between fifty and 150 years.[9]

Phanhnao argues that, given his age,[10] a fifty-year sentence would "achieve the overreaching goal [of] rehabilitating Mr. Phanhnao while also protecting the public." Phanhnao does not suggest any of the reasons provided by the district court for exercising its discretion in imposing a sentence in the middle of the available range were untenable or unreasonable. *See Wilbourn*, 974 N.W.2d at 65. We find the district court did not abuse its sentencing discretion and affirm the sentence imposed.

---

[9] Section 124.413(1) requires those convicted under section 124.401(1)(e) serve a mandatory minimum "one-third of the maximum indeterminate sentence."
[10] Phanhnao was fifty-seven years old at the time of sentencing.

*D. Implicit bias video.* Finally, Phanhnao asserts the court's denial of his request to have the prospective jurors watch a video on implicit bias was a violation of his Sixth-Amendment rights.[11]

While we review constitutional questions de novo, claims of voir dire error are reviewed for an abuse of discretion. *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019).

> While there is general agreement that courts should address the problem of implicit bias in the courtroom, courts have broad discretion about how to do so. . . . We strongly encourage district courts to be proactive about addressing implicit bias; however, we do not mandate a singular method of doing so.

*Plain*, 898 N.W.2d 817 (noting one way to address implicit bias is by giving a jury instruction). The video requested is akin to a pretrial cautionary instruction, and thus the court's refusal to show it "does not warrant reversal unless it results in prejudice to the complaining party." *See id.*

At the beginning of jury selection, the judge told the potential jurors,

> It's very important that we have a jury of [thirteen] individuals who can hear this case fairly and impartially without any biases or prejudices for or against either party without any preconceived notions as to how this case should turn out.
> We understand that each of us come into this courtroom with a completely different set of life experiences, and there may be things in each of our backgrounds which, whether we realize it or not, may make it difficult for us to be fair and impartial in a particular type of case.

Then, at the close of the case, the jury was given an instruction not to base their decision on biases.[12] At sentencing, the court addressed Phanhnao's posttrial

---

[11] Before COVID-19, Black Hawk County regularly played an implicit bias video to potential jurors, but that practice had not restarted in all trials when this trial occurred.

[12] The bias jury instruction stated:

motion for new trial and motion in arrest of judgment which raised the implicit-bias video as an issue. The court noted,

> The implicit bias video comes from the clerk's office with the court attendants.
>
> The implicit bias video, when it is shown, is shown without the court's involvement, without counsel's involvement, without the defendant's involvement prior to the jury being sworn, prior to the pool being questioned; and it's, frankly, done outside the actual trial process.
>
> . . . .
>
> So regardless of whether a video of unknown origin that, frankly, has no connection to the judge or the parties was shown, our particular jury was instructed not once but twice by the court regarding potential biases, and the attorneys were free to question about any potential bias; so the court does not find that there would be any reason whatsoever at all to suggest that a new trial needs to be ordered.
>
> Frankly, there's a blanket statement basically that because there was not a video somehow there was bias. There is no evidence in this record, period, to suggest there was any bias on behalf of anybody in deciding this case.

Phanhnao has not provided a copy of the requested video for review and provides no comparison of its contents to the content of the court's comment to the jury before selection or the instruction provided at the end. Regardless of the contents of the video, the jury was advised about bias, and Phanhnao has not identified any prejudice caused by the court using a pretrial caution and jury instruction instead of the video. We affirm on this issue.

**AFFIRMED.**

---

As you consider the evidence, do not be influenced by any personal sympathy, bias, prejudices or emotions. Because you are making very important decisions in this case, you are to evaluate the evidence carefully and avoid decisions based on generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your reason and common sense. and these instructions. As jurors, your sole duty is to find the truth and to do justice.